Thomas D. ABSHIRE,
Plaintiff-Appellee,

v.

Stanley I. WALLS, Individually and as a
Police Officer; Harold B. Queen, Indi-
vidually and as a Police Officer; Ron-
ald C. Joynes, Individually and as a
Police Officer; Barry C. Barber, Indi-
vidually and as a Police Officer; Caro-
lyn Cook, Individually and as a Police
Officer; John Krach, Individually and
as a Police Officer; Cornelius J. Behan,
Individually and as Chief of Police;
Baltimore County Police Department,
Agency of Baltimore County; Balti-
more County, a Body Politic of the
State of Maryland, Defendants-Appel-
lants.

Thomas D. ABSHIRE,
Plaintiff-Appellant,

v.

Stanley I. WALLS, Individually and as a
Police Officer; Harold B. Queen, Indi-
vidually and as a Police Officer; Ron-
ald C. Joynes, Individually and as a
Police Officer; Barry C. Barber, Indi-
vidually and as a Police Officer; Caro-
lyn Cook, Individually and as a Police
Officer; John Krach, Individually and
as a Police Officer; Cornelius J. Behan,
Individually and as Chief of Police;
Baltimore County Police Department,
Agency of Baltimore County; Balti-
more County, a Body Politic of the
State of Maryland, Defendants-Appel-
lees.

Nos. 86–7700, 86–7701.

United States Court of Appeals,
Fourth Circuit.

Argued July 31, 1987.

Decided Oct. 2, 1987.

John A. Austin, Asst. Co. Atty., Towson, Md., (Malcolm F. Spicer, Jr., Co. Atty., Baltimore, Md., on brief), for plaintiff-appellant.

Leslie L. Gladstone, Baltimore, Md., for defendants-appellees.

Before WINTER, Chief Judge, and MURNAGHAN and SPROUSE, Circuit Judges.

SPROUSE, Circuit Judge:

Stanley I. Walls, Harold B. Queen, and John Krach—police officers in Baltimore County, Maryland—appeal from the district court's order denying their request for judgment notwithstanding the verdict in Thomas D. Abshire's 42 U.S.C. § 1983 action against them. The jury had awarded Abshire $7,000 after it found that Walls, Queen and Krach had participated in an unreasonable strip search of Abshire following his arrest for disorderly conduct on August 3, 1982. The police officers also contend on appeal that the district court made a number of other errors during the course of this litigation, i.e., evidentiary rulings, jury instructions, and the timing of its grant of summary judgment. Abshire cross-appeals from the district court's grant of summary judgment in favor of other defendants and from the district court's limited award of attorneys' fees.

We affirm all of the district court's rulings except its limited award of attorneys' fees.

## I.

The testimony at trial revealed the following sequence of events. Abshire, a deputy sheriff for the City of Baltimore, Maryland, spent the evening of August 2, 1982, drinking and conversing with friends in a number of different establishments. In the early morning hours of August 3, he took a taxicab to his fiancee's residence in the Towson area of Baltimore County. He got out of the cab about a block from his fiancee's home and began walking toward her house. As he crossed the street, Abshire tripped on the curb and fell backwards, striking his head on the pavement and knocking himself unconscious. An anonymous caller notified the police of Abshire's predicament. Officers Walls and Queen responded to the call at approximately 6:20 a.m. and discovered Abshire still lying in the street unconscious. As the officers helped him to his feet, Queen observed a .38 caliber revolver on the ground underneath the spot where Abshire had lain. Queen secured the weapon and asked Abshire why he was carrying a gun. Abshire identified himself as a deputy sheriff and produced his badge and other identifying information. The officers continued to question him about the gun, as well as the contents of his briefcase and why he was in the neighborhood.[1] After ten to fifteen minutes of questioning, Abshire attempted to leave the scene and go to his fiancee's house, but the officers detained him and continued their questioning. Later, a second police car driven by Officer Barber arrived at the scene and, after a brief conference, Abshire was arrested for disorderly conduct and taken to Towson Precinct # 6 of the Baltimore County Police Department.

At the police station, Abshire was processed[2] and then handcuffed to a railing.

---

[1]. When he fell, Abshire's briefcase had opened and some of its contents were scattered on the street. In his briefcase, Abshire carried numerous items of personal jewelry, an extra holster and ammunition for his revolver. In addition, in one of his pockets he carried approximately $1700 in cash.

[2]. While he was being processed, Abshire's revolver was checked and found to contain one empty chamber and one chamber with an empty shell casing.

He testified that he made numerous requests to use the telephone, all of which were denied. He also testified that after one such request Officer Krach approached him and told him to "be quiet or I will have you unhandcuffed and have the boys have a go around with you around back." After Abshire responded indignantly, Krach said "let's strip search him." Abshire was then unhandcuffed and escorted to a utility room, where he was forced to disrobe and subject himself to a strip search by Officers Walls and Queen. Abshire testified that a number of other officers were also present in the room and observed the search. After the search, Abshire was placed in a cell until he was released on his own recognizance following a bail hearing later that day.[3]

Abshire filed this § 1983 action in federal court in May 1984. Count One of his amended complaint alleged false arrest and named Officers Walls and Queen as defendants. Count Two alleged false imprisonment and named Officers Walls, Queen and Joynes (the desk sergeant at the precinct) as defendants. In Count Three, Abshire alleged that Officers Walls, Queen and Barber were liable for malicious prosecution. In Count Four, Abshire alleged a § 1983 violation, *i.e.*, an unconstitutional strip search. Named as defendants were Officers Walls, Queen, Joynes, Krach, Cook[4] and Barber; Cornelius J. Behan, the Chief of Police of Baltimore County; the Baltimore County Police Department; and Baltimore County. Finally, in Count Five, Abshire alleged that Officers Walls, Queen, Joynes, Krach, Cook and Barber had violated 42 U.S.C. § 1985 by conspiring to deprive him of his constitutional rights.

On December 9, 1985, the district court granted summary judgment in favor of Officer Joynes on Counts Two and Four, and in favor of Officer Cook, Chief of Police Behan, the Baltimore County Police Department, and Baltimore County on Count Four. The remainder of the case proceeded to trial. After the close of Abshire's case-in-chief, the court directed a verdict on

Count Five (the § 1985 claim) in favor of each defendant. The court submitted the remaining counts to the jury, which found in favor of each of the defendants on Counts One, Two and Three and in favor of Officer Barber on Count Four. The jury, however, found in favor of Abshire on Count Four (his strip search claim) against Officers Walls, Queen and Krach. It awarded him compensatory damages of $500 against both Walls and Queen and $1,000 against Krach. The jury also awarded Abshire punitive damages of $1,250 against both Walls and Queen and $2,500 against Krach.

After trial, Walls, Queen and Krach moved for a judgment notwithstanding the verdict on the strip search claim, contending that the search of Abshire was reasonable as a matter of law and that this issue should never have been submitted to the jury. The district court denied the motion, ruling that the reasonableness of the search was a question for the jury. Abshire moved for an award of attorneys' fees and costs under 42 U.S.C. § 1988. He requested $17,366.25 in fees and $482.55 in costs for his legal counsel, Leslie Gladstone. Relying on the Supreme Court's decision in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the district court awarded Abshire only one-fourth of the requested amount.

This appeal and cross-appeal follow.

## II. The Officers' Appeal

### a. The District Court's Denial of the Officers' Motion For J.N.O.V. on Abshire's § 1983 Claim

■ The standard in this circuit for judging the constitutionality of a strip search of a pre-trial detainee is firmly established. In *Logan v. Shealy*, 660 F.2d 1007 (4th Cir.1981), *cert. denied*, 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982), we stated that

> Strip searches of detainees are constitutionally constrained by due process requirements of reasonableness under the

---

3. On September 2, 1982, Abshire was acquitted on the disorderly conduct charge.

4. Cook was a female officer who allegedly witnessed Abshire's strip search.

circumstances. "In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.* at 1013 (quoting *Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979)). On appeal, the officers contend that the evidence clearly established that the "need for the ... search" outweighed "the invasion of personal rights." They argue that the search was therefore reasonable as a matter of law and the district court erred in denying their motions for directed verdict and judgment notwithstanding the verdict. We disagree.

In support of their position, the officers point to the following evidence. First, Baltimore County's strip search policy provided that "[a]rrestees shall not be subject to a strip search unless specific factors are present which establish [a] reasonable belief that the search will uncover or recover a weapon or a controlled substance." Officer Krach, who authorized the search of Abshire, testified that he had a "reasonable belief that the search [would] uncover or recover a weapon or a controlled substance" because

> number one, he was intoxicated, and there was no way to tell what he was intoxicated from or what combination of things he was intoxicated from [and,] [n]umber two, he was carrying a service revolver with one spent cartridge and one empty round and he was also carrying additional ammunition.

Second, the officers contend that the evidence established that the search was no more intrusive than necessary to determine if Abshire carried "a controlled substance or a weapon." Finally, Officer Walls testified that he and another officer conducted the search in a utility room and, although the lock on the door was open and the door slightly ajar, the open door faced only the end of an empty hallway.

In contrast, Abshire contends that the invasion of his personal rights far outweighed any legitimate need for the search. He maintains that the police lacked a reasonable belief that the search would uncover a weapon because his revolver and ammunition had already been confiscated. Moreover, a less intrusive pat-down search was never conducted, nor was any evidence introduced as to why a more limited search was not feasible. Finally, Abshire testified that the strip search was conducted in front of six to eight police officers—five who were in the room with him and several others, including a female officer, who witnessed the search while standing in the adjacent hallway.

Considering the evidence in the light most favorable to Abshire, *see Wilhelm v. Blue Bell, Inc.,* 773 F.2d 1429, 1433 (4th Cir.1985), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986), the circumstances surrounding the search convincingly reinforces the decision of the trial court that the reasonableness of the search was a jury question.

#### b. *The District Court's Evidentiary Rulings*

■ Abshire moved *in limine* to exclude any documentary or testimonial evidence concerning his prior criminal record. Relying on Federal Rule of Evidence 609, the district court granted the motion and refused to permit any inquiry into Abshire's prior convictions. The police officers then proffered that they would have shown that Abshire: (1) was sentenced to one year in jail in 1968 for receiving stolen property; (2) received a probation before verdict on a disorderly conduct charge in June 1970; (3) was given a six-month suspended sentence and one-year probation in October 1970 for bypassing an electric meter; (4) was charged with two counts of failing to appear in housing court in October 1978, for which he paid an undisclosed amount in fines; and (5) was charged with contempt of court in March 1979 for failing to appear as required, for which he paid a fifteen dollar fine. Following the officers' proffer, the district court reaffirmed its decision.

On appeal, the police officers contend that the trial court erred in relying on Rule 609 to exclude evidence in this civil proceeding because Rule 609 applies only in a criminal setting. *See, e.g., Moore v. Volkswagenwerk, A.G.,* 575 F.Supp. 919 (D.Md. 1983). The district court reasoned that Abshire's prior convictions should be excluded because their prejudicial effect outweighed their probative value. This reasoning, however, is also pertinent to excluding evidence under Rule 403, which provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, of misleading the jury, or by considerations of undue delay, waste of time, or a needless presentation of cumulative evidence.

Fed.R.Evid. 403. We, therefore, need not resolve Rule 609's applicability in a civil proceeding if Abshire's prior criminal record would be properly excluded under Rule 403.

The officers nevertheless contend that, even if the trial court's action is analyzed under Rule 403, the court still abused its discretion in refusing to admit evidence of Abshire's prior criminal record because the danger of unfair prejudice did not substantially outweigh its probative value. They urge that Abshire had attempted to bolster his credibility by relying on his status as a law enforcement officer. The officers argue that they consequently had the right to introduce Abshire's prior convictions to impeach his credibility. We disagree.

The unfair prejudice accompanying the admission of the latter four incidents proffered by the officers may well have substantially outweighed their probative value so that the trial court did not abuse its discretion in excluding the evidence. Since these events either occurred long ago or involved minor violations not involving dishonesty (or both), their probative worth is almost nil on the question of whether the jury should have believed Abshire's testimony. The record also amply supports the district court's ruling that the probative value associated with Abshire's 1968 conviction for receiving stolen property is sub-

stantially outweighed by the danger of unfair prejudice. The conviction was more than ten years old and, moreover, a conviction for receiving stolen property is not highly probative of credibility. *See United States v. Glenn,* 667 F.2d 1269, 1273 (9th Cir.1982) (theft crimes generally do not involve "dishonesty or false statement.")

The officers also contend that the district court erred by refusing to allow them to cross-examine Abshire as to whether he had been strip searched on any previous occasion. They reasoned that they should have been allowed to pursue this line of questioning in an attempt to counteract Abshire's testimony complaining of the humiliating effect of the strip search. Although the district court did not ground his ruling on any particular rule of evidence, we conclude that this evidence was also properly excluded under Rule 403.

The officers further contend that the court erred in instructing the jury on the "good faith" defense, *see Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), and in delaying its summary judgment ruling until the eve of trial. Our review of the record, however, convinces us that neither contention is of sufficient merit to warrant discussion.

### III. Abshire's Cross-Appeal

#### a. *The District Court's Grant of Summary Judgment in Favor of Certain Defendants*

■ Prior to trial, the district court granted summary judgment on Abshire's § 1983 claim in favor of Officer Joynes, Chief of Police Behan and Baltimore County. In his cross-appeal, Abshire contends that the court erred in granting summary judgment to Officer Joynes because a genuine issue of material fact existed over his participation in the strip search. Abshire contends the court erred in granting summary judgment to Chief Behan and the County because they failed to take steps to ensure that the County's strip search policy was being enforced properly. We disagree with both contentions.

Officer Joynes was the desk officer at the police station. His duties included fin-

gerprinting and photographing arrestees, as well as performing other administrative tasks. At most, the pretrial evidence revealed that he had helped escort Abshire to the utility room and then remained in the room during the search. There was no evidence, however, indicating that he had participated in the search and the district court acted correctly in granting summary judgment in his favor.

It is undisputed that the strip search policy promulgated by Chief Behan satisfied constitutional standards. Nonetheless, Abshire contends that by failing to oversee the policy through periodic inspections, Chief Behan "closed his eyes" to any policy violations and is thus liable for the misconduct of his subordinates. This position, however, is at odds with our decision in *Fisher v. Washington Metropolitan Area Transit Authority*, 690 F.2d 1133, 1142–43 (4th Cir.1982). In *Fisher*, we held that a sheriff could not be vicariously liable under § 1983 for the acts of his subordinates, nor could he "be held liable on the basis of a failure adequately to supervise or control any conduct that directly caused the specific deprivation charged." *Id.* at 1143. Since Abshire's complaint alleged only that Chief Behan failed to adequately supervise the County's strip search policy, the district court acted properly in granting summary judgment to Chief Behan. The court's grant of summary judgment in favor of Baltimore County was likewise correct. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 692–94, 98 S.Ct. 2018, 2036–38, 56 L.Ed.2d 611 (1978).

### b. *Attorneys' Fees*

■ The district court found that Abshire, as a prevailing party, was entitled to a reasonable award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988. Abshire requested $17,366.25 in fees and $482.55 in costs for his legal counsel, Leslie Gladstone. The court determined, however, that Abshire's successful strip search claim was unrelated to his unsuccessful claims for false arrest, false imprisonment and malicious prosecution. Relying on the Supreme Court's decision in *Hensley v.*

*Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), in which the Court held that no fees should be awarded for time spent on unsuccessful claims that were unrelated to successful ones, the district court ruled that Abshire should not be compensated for the time Gladstone spent pursuing the false arrest, false imprisonment and malicious prosecution claims. Moreover, because the court was unable to identify exactly how much time was spent on each claim, it reduced Gladstone's total hours by seventy-five percent. Using the same reasoning, it also reduced Abshire's requested costs by seventy-five percent. After further calculations not relevant to this appeal, the court determined that it was reasonable to award Abshire $4,132.75 in attorneys' fees and $120.67 in costs for the time expended pursuing his successful strip search claim.

On appeal, Abshire contends that the district court misinterpreted the Supreme Court's ruling in *Hensley*. We agree. In *Hensley*, the Court reaffirmed that the award of attorneys' fees is within the discretion of the district court. *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941. The Court also observed, however, that this discretion "must be exercised in light of the considerations we have identified." *Id.* One of the considerations identified by the Court was the relationship between successful and unsuccessful claims. For example, in cases where the plaintiff presents claims for relief that are based on different facts and legal theories, the court held that he should not be compensated for the time expended pursuing claims that ultimately proved unsuccessful. *Id.* at 435, 103 S.Ct. at 1940. On the other hand, "the plaintiff's claims for relief [may] involve a common core of facts or ... be based on related legal theories." *Id.* Under these circumstances, the court stated that

"[m]uch of the counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead, the district court should focus on the signifi-

cance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended in the litigation."

*Id.* at 435, 103 S.Ct. at 1940.

In this case, Abshire's claims were based on different legal theories, but they all arose from a "common core of facts." The facts surrounding Abshire's strip search were inextricably intertwined with the facts surrounding his initial confrontation with the police, his arrest and later imprisonment. In our view, it is impossible to isolate the inquiry into the constitutionality of the strip search from the other facts. Abshire's attorney could not have presented the constitutional aspects of this case without developing and presenting the facts surrounding the entire sequence of events that transpired on the morning of August 3. The district court thus erred in concluding that Abshire's claims for false arrest, false imprisonment, and malicious prosecution were unrelated to his strip search claim. The court's award of attorneys' fees must therefore be vacated and this portion of the case remanded for a recalculation of the amount of attorneys' fees owed Abshire based on the views that we have expressed.[5]

### IV.

To reiterate, we affirm the district court's denial of the officers' motion for judgment notwithstanding the verdict on Abshire's strip search claim. We also affirm the court's contested evidentiary rulings. Finally, we affirm the court's grant of summary judgment on Abshire's strip search claim in favor of Officer Joynes, Chief of Police Behan and Baltimore County. However, we reverse the district court's limited award of attorneys' fees and remand for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

---

[5]. On appeal, Abshire also contends that the district court erred in denying his request for $3,348.75 in fees and $930.71 in costs for two other attorneys who represented him in a previous state court action against the officers. We find no merit to this contention.