Ronald L. MOENIUS

v.

T.W. STEVENS, et al.

Civ. No. Y–87–1664.

United States District Court,
D. Maryland.

June 20, 1988.

Michael B. Mann, Towson, Md., for plaintiff.

Robert C. Verderaime, Baltimore, Md., for defendants T.W. Stevens and Frank McManus.

Benjamin L. Brown, City Solicitor, Baltimore, Md., and Millard Rubenstein, Asst. City Solicitor, Baltimore, Md., for defendant Mayor and City Council of Baltimore.

JOSEPH H. YOUNG, Senior District Judge.

## MEMORANDUM

Ronald Moenius filed this action in state court under state and federal law for compensatory and punitive[1] damages relating to his arrest and overnight detention in the central police lockup in Baltimore City on the charge of loitering. Plaintiff alleged that his arrest was malicious and without just cause; that the jailor's discretionary decision to place him in a detention cell bearing a sign entitled "AIDS Cell" intentionally and maliciously inflicted emotional distress; and that the criminal prosecution, which was dropped, was malicious. Plaintiff sued Stevens (the police officer) and the City (the Mayor and City Council of Baltimore) in Count I for the violation of civil rights arising from his arrest, and sued McManus (the jailor) and the City in Count II for violation of civil rights arising from his detention. Counts III, IV, and V assert state law claims against all defendants for intentional infliction of emotional distress, false arrest, and false imprisonment, respectively. Count VI alleges that Stevens and the City are liable for malicious prosecution.

Defendants removed this case from state court pursuant to 28 U.S.C. § 1441. Ste-

---

1. Plaintiff later conceded that a municipality is not subject to punitive damage awards under the facts of this case. *See City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981); *Herilla v. Mayor and City Council of Baltimore,* 37 Md. App. 481, 492, 378 A.2d 162 (1977).

vens and McManus then answered the complaint. The Mayor and City Council of Baltimore, however, promptly filed a motion to dismiss arguing that plaintiff's first two counts, under 42 U.S.C. § 1983, were flawed because he had not identified a "policy or custom that is causally connected [to] plaintiff's deprivation," and that plaintiff's state law claims against them were barred by the City's immunity to tort suits at state law. By memorandum and order dated November 17, 1987, the Court granted the motion of the Mayor and City Council of Baltimore to dismiss the state law claims against them. *See Hector v. Weglein,* 558 F.Supp. 194, 206 (D.Md.1982). Thus, plaintiff's common law claims proceed only against defendants Stevens and McManus. The Court, however, did not dismiss plaintiff's federal claims against the city defendants in Counts I and II. Although the Court found it difficult to ascertain the basis of plaintiff's civil rights claims, the Court allowed plaintiff to develop a theory of municipal liability through discovery. Plaintiff has had this opportunity and the city defendants have now moved for summary judgment. The Court finds that plaintiff's theory of liability continues to be insufficiently refined for liability to exist under standards outlined in recent Supreme Court decisions. Thus, the Court finds, as a matter of law, that the plaintiff has not stated a claim against the Mayor and City Council of Baltimore.

## MUNICIPAL LIABILITY STANDARDS

Plaintiff brings his civil rights claims under Section 1 of the Ku Klux Klan Act of 1871, 42 U.S.C. § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

*Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), recognized municipal governments as "persons" under the Act and therefore liable for constitutional torts through "a policy statement, ordinance, regulation, or decision officially adopted or promulgated by that body's officers." 436 U.S. at 690, 98 S.Ct. at 2036. The Court also recognized that liability exists "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom had not received formal approval through the body's official decision making channels." *Id.* at 690–91, 98 S.Ct. at 2036. Thus, "persistent and widespread practices of state officials.... could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id.* at 691, 98 S.Ct. at 2036 (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167–68, 90 S.Ct. 1598, 1613, 26 L.Ed.2d 142 (1970)). Thus, although the *Monell* decision held that "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory," 436 U.S. at 691, 98 S.Ct. at 2036, that exclusion was tempered by the availability of an alternative theory: "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. at 2037. Thus, acts of the municipality's agents may be the basis of municipal liability "only where the decision-maker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986).

In *Pembaur,* the Supreme Court held that such liability may be imposed even on the basis of a "single decision by municipal policymakers under appropriate circumstances." *Id.* at 480, 106 S.Ct. at 1298. The plurality opinion reasoned that "particular officers may have authority to establish binding county policy respecting particular matters and to adjust that policy for the county in changing circumstances.... We hold that municipal liability under

§ 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* at 483–84, 106 S.Ct. at 1300. However, "the fact that a particular official—even a policy-making official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Id.* 106 S.Ct. at 1299.

The recent plurality opinion in *St. Louis v. Praprotnik,* —— U.S. ——, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), noted the need for further clarification of the uncertain standard of municipal liability where delegation of authority is alleged: "If the mere exercise of discretion by an employee could give rise to a constitutional violation, the result would be indistinguishable from *respondeat superior* liability. If, however, a city's lawful policymakers could insulate the government from liability simply by delegating their policymaking authority to others, § 1983 could not serve its intended purpose." 108 S.Ct. at 925. Rather than attempting to "draw an elegant line that will resolve this conundrum," *id.,* the Court instead reemphasized previously identified principles. First, the possibility of proving "widespread practices" which are "permanent and well settled" should "ensure[ ] that most deliberate municipal evasions of the Constitution will be sharply limited." *Id.* at 926. Second, "the authority to make municipal policy is necessarily the authority to make *final* policy.... When an official's discretionary decisions are constrained by policies not of that official's making, these policies, rather than the subordinate's departures from them, are the act of the municipality.... If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *Id.* The Court elaborated on this distinction:

> Simply going along with discretionary decisions made by one's subordinates, however, is not a delegation to them of the authority to make policy. It is equal-

ly consistent with a presumption that the subordinates are faithfully attempting to comply with the policies that are supposed to guide them. It would be a different matter if a particular decision by a subordinate was cast in the form of a policy statement and expressly approved by the supervising policymaker. It would also be a different matter if a series of decisions by a subordinate official manifested a "custom or usage" of which the supervisor must have been aware.... In both those cases, the supervisor could realistically be deemed to have adopted a policy that happened to have been formulated or initiated by a lower-ranking official. But the mere failure to investigate the basis of a subordinate's discretionary decisions does not amount to a delegation of policymaking authority, especially where (as here) the wrongfulness of the subordinate's decision arises from a retaliatory motive or other unstated rationale. In such circumstances, the purpose of § 1983 would not be served by treating a subordinate employee's decision as if it were a reflection of municipal policy.

*Id.* at 927.

The *Praprotnik* decision also specifically rejected the "suggestion that a jury should be entitled to define for itself which officials' decisions should expose the municipality to liability." *Id.* at 928. Thus, because the issue is ultimately jurisdictional, it is for the Court to determine whether identified circumstances of municipal policymakers' involvement are sufficient to warrant potential liability for the municipality.

## PLAINTIFF'S MUNICIPAL LIABILITY THEORY

Plaintiff's complaint does not allege any actions or official policy of the Mayor and City Council of Baltimore as the basis of his civil rights claims. Rather, his allegations refer to defendants Stevens and McManus as agents, servants, and employees of the City, acting in their official capacity. In prior briefing, however, plaintiff argued that the jailor who has "[t]he sole decision of what cell a particular prisoner is placed

in" qualifies as the "one who establishes governmental policy as to where to place a person," and thus his single decision to place plaintiff in the detention cell allegedly bearing the sign "AIDS Cell" constituted "official policy." In briefing the pending summary judgment motion, plaintiff explains his theory of municipal liability as follows: "The Mayor and City Council of Baltimore City, through its agent, McManus, and other turnkeys, developed a policy of putting certain arrestees in an 'AIDS' cell for the improper purpose of terrorizing and harrassing as opposed to legitimate sequestration for health reasons." Response at 4.

Plaintiff cites the deposition of Gary May, a sergeant with the Baltimore City Police Department, wherein Sgt. May describes a conversation with Officer Barton which occurred after Sgt. May was contacted either by phone or in person by the plaintiff and by his counsel regarding plaintiff's treatment at the central lockup. Apparently Barton "was a sort of coordinator for the turnkeys" at the central police lockup. Mays recalled that Barton told him that there was a sign over one of the cells labeled "AIDS," and that

> [a]ccording to Barton, he doesn't know where this started, but someone got the idea to use that as a subterfuge against persons that were arrested for drugs. Many of them were under the impression that turnkeys wouldn't search them if they tell the turnkeys that they are infested with AIDS, in hopes of not having some drug that may be on their person discovered. So to get around that, they put a sign over the cell, and would take this person who say he has AIDS, hoping on the chance that the person would see the sign and say, 'I really don't have AIDS. Go ahead and search me.'

Mays Dep. at 21. Mays also testified that he told Barton to "have the sign taken down, if it was still up and if it wasn't up, to let people know not to put the sign up anymore." *Id.* at 20.

■ These factual allegations fail to support a claim for municipal liability under § 1983. The facts, at most, reveal a half-baked idea of unknown origin which terminated at the first inquiry by supervising officials in the police department. Plaintiff has presented no evidence that this idea was a "widespread practice" or that it was "so permanent and well settled as to constitute a 'custom or usage' with the force of law." Nor has plaintiff identified which employees had been delegated the requisite "policymaking authority" from supervisors whose "ratification would be chargeable to the municipality because their decision is final." The evidence does not reveal any "series of decisions by a subordinate official manifest[ing] a 'custom or usage' of which the supervisor must have been aware." Rather than "deliberate indifference" or "the policy of ... terrorizing and harrassing" detainees which plaintiff asserts existed, the Court finds the factual allegations supportive only of an inference of supervisory negligence or "mere failure to investigate" lockup procedures, which are insufficient to support § 1983 municipal liability. *See generally Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). *Cf. Stokes v. Bullins,* 844 F.2d 269, 273 (5th Cir.1988) ("To require a conscious choice is at odds with simple negligence"); *Abshire v. Walls,* 830 F.2d 1277, 1282 (4th Cir.1987) (allegation that superior "closed his eyes" insufficient); *Spell v. McDaniel,* 824 F.2d 1380, 1390 (4th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988) (policymaker's mere negligence insufficient).

■ Plaintiff's theory ultimately rests on his metaphysical conception of the "final authority" standard—that *each* turnkey makes "final" decisions regarding placement of a given detainee in a particular cell. Such a reductionist analysis renders absurd the identification of a "deliberate choice to follow a course of action ... from among various alternatives." Such decisions form the essence of rational behavior and, with luck, the day-to-day operation of any government. That description of official "policy," derived from Webster's and borrowed in *Pembaur,* 475 U.S. at 481 n. 9, 106 S.Ct. at 1299 n. 9, and in *Tuttle,* 471 U.S. at 823 n. 6, 105 S.Ct. at 2436 n. 6, is

misleading insofar as it emphasizes the form of the municipal officials' behavior. Section 1983 applies only to official decisions of a binding or lasting nature. Thus, an official policy consists of guidelines constraining the free exercise of discretion by subordinate government agents. The Court finds the definition of "policy" in Black's more accurate and helpful in § 1983 analysis: "The general principles by which a government is guided in its management of public affairs, or the legislature in its measures." [2] Black's Law Dictionary 1041 (5th ed. 1979). That is, official government "policy," as a modern day approximation of § 1983's "custom or usage" language, refers not to the decisions made in implementing substantive or procedural guidelines, but rather the guidelines themselves.[3]

The facts alleged by plaintiff in the instant case identify only actions occurring below the threshhold of supervisory ratification; thus, to impose liability on the Mayor and City Council would be equivalent to sanctioning *respondeat superior* liability. Accordingly, plaintiff's federal civil rights claims in Counts I and II will be dismissed as to the city defendants. Moreover, because these two counts also assert claims based upon the personal actions of defendants Stevens and McManus not sanctioned by "policy or custom," such allegations are also dismissed. *See Monell*, 436 U.S. at 691 n. 55, 98 S.Ct. at 2035 n. 55. Plaintiff's state law claims against the indi-

viduals, defendants Stevens and McManus alone, may proceed to trial.

## ORDER

In accordance with the attached Memorandum, it is this 20th day of June, 1988, by the United States District Court for the district of Maryland, ORDERED:

1. That the motion of defendants Mayor and City Council of Baltimore for summary judgment on Counts I and II BE, and the same IS, hereby GRANTED; and

2. That, the Court already having granted the motion of the Mayor and City Council of Baltimore to dismiss Counts III, IV, and V, judgment BE, and the same hereby IS, ENTERED in favor of the Mayor and City Council of Baltimore;

3. That summary judgment on Counts I and II against defendants Stevens and McManus BE, and the same hereby IS, GRANTED; and

4. That a copy of this Memorandum and Order be mailed to counsel for the parties.

---

**2.** Of course, this definition must yield to the truism stated by Justice Brennan in *Pembaur:* "a municipality may be held liable under § 1983 for a single decision by its properly constituted legislative body—whether or not that body has taken similar action in the past or intended to do so in the future—because even a single decision by such a body unquestionably constitutes an act of official government policy." 475 U.S. at 480, 106 S.Ct. at 1298. Such overbroad application of the term "policy" after its introduction in *Monell* has unfortunately added some analytical confusion to such simple situations: by its own terms, § 1983 clearly applies to "any statute, ordinance, [or] regulation" promulgated by a municipal legislature. The *Monell* analysis should be applied only where non-legislative officials' actions are alleged to have followed a "custom, or usage"—in modern terms, a "policy."

**3.** Individual decisions may reflect the swift development of, or longtime adherence to, such a guideline, but the true test is whether the resulting behavior was intended to follow the guideline. *Cf. Wellington v. Daniels,* 717 F.2d 932, 936 (4th Cir.1983) ("selection of goals"). As Justice Stevens noted in his dissenting opinion in *Praprotnik,* the Supreme Court's holdings in *Pembaur, Tuttle,* and *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), can be reconciled with the requirement of action "taken pursuant to a rule of general applicability." 108 S.Ct. at 946–48. Such a rule would typically be applicable "across a class of cases." *Id.* at 948. *See also id.,* n. 22 (law of agency identifies a general agent as one "authorized to conduct a series of transactions involving a continuity of service").