973 F.2d 378
 James Kenneth GOODWIN; Eddie Earl Hallman, Plaintiffs-Appellants,
v.
James R. METTS, individually and in his official capacity as
Sheriff of Lexington County, South Carolina; Vernon O.
Maxwell, individually and in his official capacity as a
Lexington County Deputy Sheriff, Defendants-Appellees,
and
Ralph Bishop, individually and d/b/a Bishop Salvage Company,
Defendant.
James Kenneth GOODWIN; Eddie Earl Hallman, Plaintiffs-Appellees,
v.
James R. METTS, individually and in his official capacity as
Sheriff of Lexington County, South Carolina; Vernon O.
Maxwell, individually and in his official capacity as a
Lexington County Deputy Sheriff, Defendants-Appellants,
and
Ralph Bishop, individually and d/b/a Bishop Salvage Company,
Defendant.
 Nos. 91-2518, 91-2523.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 4, 1992.
Decided Aug. 28, 1992.
 
 Armand Georges Derfner, Charleston, S.C., argued (Lex Rogerson, Lexington, S.C., Herbert W. Louthian, Louthian & Louthian, Columbia, S.C., John D. Delgado, Columbia, S.C., on brief), for appellants.
 David Beam Summer, Jr., Nexsen, Pruet, Jacobs & Pollard, Columbia, S.C., argued (Harold W. Jacobs, on brief), for appellees.
 Before RUSSELL, Circuit Judge, and BUTZNER and CHAPMAN, Senior Circuit Judges.
 OPINION
 DONALD RUSSELL, Circuit Judge:
 
 
 1
 James Kenneth Goodwin and Eddie Earl Hallman appeal the district court order disallowing approximately fifty-percent (50%) of the fees claimed for Goodwin's and Hallman's attorneys pursuant to 42 U.S.C. § 1988 (1988). Appellee Vernon O. Maxwell cross-appeals, arguing that the district court erred in refusing to limit its award of attorneys' fees to a percentage of the damages recovered, as specified in Appellants' compensation agreement with their attorneys. As explained herein, we affirm the district court order.
 
 I.
 
 2
 In the underlying district court action, Appellants Goodwin and Hallman alleged, inter alia, that they were improperly prosecuted for a break-in which occurred in May of 1983 at the residence of their employer, Ralph Bishop, in Lexington County, South Carolina. Goodwin and Hallman obtained a verdict against Lexington County Deputy Sheriff Vernon O. Maxwell for malicious prosecution in violation of 42 U.S.C. § 1983 (1988)[1] and for malicious prosecution in violation of South Carolina law, and against Sheriff James R. Metts for malicious prosecution in violation of South Carolina state law. The jury awarded $150,000 in total compensatory damages against Maxwell and Metts, and $175,000 in punitive damages against Maxwell alone. The district court action also involved numerous unsuccessful federal and state claims against Bishop, Maxwell and Metts, and against Maxwell's partner, Deputy Sheriff John T. Vaughn.
 
 
 3
 On appeal of the underlying action, the Fourth Circuit affirmed the district court's award of compensatory damages, but reversed the award of punitive damages. Goodwin v. Metts, 885 F.2d 157, 165-69 (4th Cir.1989), cert. denied sub nom. Maxwell v. Goodwin, 494 U.S. 1081, 110 S.Ct. 1812, 108 L.Ed.2d 942 (1990). Defendant Maxwell petitioned the Fourth Circuit for a rehearing, which this court denied on November 28, 1989, before unsuccessfully petitioning the Supreme Court for certiorari.
 
 
 4
 In subsequent proceedings before the district court, Goodwin and Hallman moved pursuant to 42 U.S.C. § 1988 (1988)[2] for $432,070 in attorneys' fees and expenses, including compensation for 1,685.7 attorney hours, in connection with the action, judgment and appeal under 42 U.S.C. § 1983 (1988). After an evidentiary hearing on the motion, the district court entered an order on July 31, 1990 awarding Goodwin and Hallman attorneys' fees in the amount of $140,245.00, expenses in the amount of $12,308.57, and costs in the amount of $4,128.10. (J.A. at 322-23.) The district court thereby disallowed approximately fifty-percent (50%) of the total hours which Goodwin and Hallman claim their attorneys expended on the underlying district court action and through appeal of the judgment therein. The attorneys' fees award of $139,200 represented a total of 1,160 hours--840 attorney hours for the action in district court and 320 attorney hours for post-trial proceedings--at a uniform rate of $120 per hour.
 
 
 5
 Goodwin and Hallman appeal the district court's disallowance of the claimed attorneys' fees at both the trial level and appellate level. Appellee Maxwell cross-appeals, arguing that the district court erred in refusing to limit the attorneys' fees award to forty-percent (40%) of Appellants' recovery in the district court, per the attorneys' contingent-fee agreement with Goodwin and Hallman. We find no error in the district court order.
 
 II.
 
 6
 We first address Appellants' contention that the district court erred in disallowing approximately fifty-percent (50%) of the attorneys' hours which Goodwin and Hallman claim were expended at the district court level in the underlying action. The district court offered two reasons for allowing compensation on only 840 of the 1,685 hours claimed for attorney's work at the trial level: Goodwin's and Hallman's failure to prevail on most of the claims which they presented in the district court, and duplication of their attorneys' efforts at the district court level. The court stated,
 
 
 7
 First ... [a]lthough the plaintiffs sought to recover against all four defendants and claimed their constitutional rights were violated from the time of their arrest in April 1983 until their criminal trial in January 1984, the jury found only one defendant, Maxwell, liable under section 1983 and only for his actions in the month preceding trial, from December 1983 to January 1984. In addition, on appeal plaintiffs' recovery was limited to actual damages. Thus, a substantial number of the hours spent on factual discovery and legal research, as well as at trial, was devoted to matters on which the plaintiffs did not prevail, namely, the arrest and early prosecution of the plaintiffs, defendant Metts'[ ] policies and involvement in the prosecution and, to a lesser extent, punitive damages and the liability of defendants Bishop and Vaughn....
 
 
 8
 Second, the Court concludes that number of hours claimed should be further reduced because the association of additional lawyers during the action's pendency inevitably resulted in duplication of effort.... When first associated, the new lawyers were required to spend some time becoming familiar with the somewhat complicated facts and law involved. In addition, duplication also resulted from the use of three to four lawyers throughout the action when one or two reasonably competent lawyers would have sufficed.
 
 
 9
 For the preceding reasons, the Court reduces the time claimed at the trial level to 840 hours....
 
 
 10
 J.A. at 316-18.
 
 
 11
 Appellants Goodwin and Hallman insist that the district court's reasons for disallowing of hours spent in the district court are flawed. As to the district court's determination that Goodwin and Hallman failed to prevail on a number of their claims, Appellants argue that the district court erred in treating their unsuccessful claims as "unrelated" to their successful claims for the purposes of 42 U.S.C. § 1988. As for the district court's determination that Goodwin's and Hallman's attorneys duplicated efforts in the district court action, the Appellants argue that, even if such duplication occurred, it constituted insufficient grounds for a disallowance of the proportions here.
 
 
 12
 In a situation "where the plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief," the Supreme Court has stated, "[T]wo questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983).
 
 
 13
 The Court in Hensley elaborated upon this two-question inquiry as follows:
 
 
 14
 [C]ongressional intent ... requires that ... unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.
 
 
 15
 It may well be that cases involving such unrelated claims are unlikely to arise with great frequency. Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead, the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.
 
 
 16
 461 U.S. at 435, 103 S.Ct. at 1940. In light of the standards set forth in Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), we address Appellants' arguments that the district court erred in disallowing approximately fifty percent (50%) of the hours that Appellants claimed were expended for their civil rights action in the district court.
 
 A.
 
 17
 The Fourth Circuit previously interpreted the Supreme Court's reference to "unrelated claims" in Hensley, 461 U.S. at 435, 103 S.Ct. at 1940, in an attorneys' fees matter similar to that presented here. In Abshire v. Walls, 830 F.2d 1277, 1282-83 (4th Cir.1987), plaintiff Abshire sued officers of the Baltimore County Police Department, alleging false arrest, false imprisonment, malicious prosecution, an unconstitutional strip search in violation of 42 U.S.C. § 1983, and a conspiracy to deprive the plaintiff of his civil rights in violation of 42 U.S.C. § 1985 (1988). Abshire named six officers and the Police Chief among the defendants. Id. at 1279. The allegations arose from an incident on August 3, 1982 where police officers discovered the plaintiff Abshire unconscious in the street, arrested him for disorderly conduct,[3] handcuffed him to a railing in the police station, and responded to his requests to use a telephone with threats of physical violence and a strip search. 830 F.2d at 1278-79. Abshire recovered on only one of claims, i.e., the strip search in violation of section 1983, as against only three of the defendants. Id. at 1279.
 
 
 18
 The district court in Abshire ruled that Abshire's counsel should not be compensated for the time spent on Abshire's claims for false arrest, false imprisonment and malicious prosecution in that those unsuccessful claims were unrelated to his successful section 1983 claim for an unconstitutional strip search. 830 F.2d at 1282. The Fourth Circuit reversed. Quoting language from Hensley, 461 U.S. at 435, 103 S.Ct. at 1940, this court explained,
 
 
 19
 Abshire's claims were based on different legal theories, but they all arose from a "common core of facts." The facts surrounding Abshire's strip search were inextricably intertwined with the facts surrounding his initial confrontation with the police, his arrest and later imprisonment. In our view, it is impossible to isolate the inquiry into the constitutionality of the strip search from the other facts. Abshire's attorney could not have presented the constitutional aspects of this case without developing and presenting the facts surrounding the entire sequence of events that transpired on the morning of [Abshire's arrest]. The court's award of attorneys' fees must therefore be vacated and ... the case remanded....
 
 
 20
 Abshire, 830 F.2d at 1283. Contra Mary Beth G. v. City of Chicago, 723 F.2d 1263, 1279-80 (7th Cir.1983) (ruling civil rights plaintiff's unsuccessful false arrest and excessive force claims were unrelated to plaintiff's successful constitutional challenge to strip search; plaintiff not entitled to attorneys' fees for hours spent on false arrest and excessive force claims); see also Lenard v. Argento, 808 F.2d 1242, 1246 (7th Cir.1987) (ruling civil rights plaintiff's sequential claims, i.e., claims causally related but not dependent on the same facts, are not related for purpose of determining whether attorneys' fees may be awarded for services on unsuccessful claim; false arrest and excessive force claims therefore unrelated in determining whether failure to recover on one claim reduces amount of attorneys' fees).
 
 
 21
 We have little trouble distinguishing the instant case from Abshire v. Walls, 830 F.2d 1277 (4th Cir.1987). In December of 1983, Deputy Sheriff Maxwell received a copy of the confession of Michael Stafford, an individual apprehended in a neighboring jurisdiction who admitted to a series of break-ins at Bishop's residence in Lexington County. Goodwin v. Metts, 885 F.2d 157, 159 (4th Cir.1989), cert. denied sub nom. Maxwell v. Goodwin, 494 U.S. 1081, 110 S.Ct. 1812, 108 L.Ed.2d 942 (1990). Maxwell thereafter prepared a report indicating that Stafford's confession accounted for all the break-ins occurring at the Bishop residence, including the break-in which Goodwin and Hallman allegedly committed. However, Maxwell never disclosed the Stafford confession to the Lexington County Solicitor's Office, nor to the special prosecutor who pressed the case against Goodwin and Hallman.[4] Id. at 159-60. At the trial of Goodwin and Hallman, the special prosecutor inquired of Maxwell as to the Stafford confession, and Maxwell responded that Stafford's confession related to crimes other that the break-in which Goodwin and Hallman had allegedly committed. Goodwin and Hallman were, of course, ultimately acquitted.
 
 
 22
 In the district court, Goodwin and Hallman initially alleged thirteen causes of action and named four defendants. Appellants alleged federal causes of action for violation of the right to liberty, false arrest, malicious prosecution, conspiracy to deprive of constitutional rights, negligent supervision, and negligence. Appellants alleged pendent state causes of action for false arrest, malicious prosecution, civil conspiracy, intentional infliction of emotional distress, defamation, negligent supervision, and negligence. (J.A. at 312.) In short, Appellants alleged most of the causes of action which could conceivably arise from the four defendants' conduct from the time Goodwin and Hallman were first arrested until the time they were acquitted of the break-in. But the Appellants ultimately prevailed only upon their malicious prosecution claims, and only as against two defendants, Deputy Maxwell and Sheriff Metts. In addition, Appellants obtained a verdict against Sheriff Metts only due to a South Carolina statute making Sheriffs vicariously liable for the misconduct of their deputies. (J.A. at 313); see S.C.Code Ann. § 23-13-10 (Law. Co-op.1976).
 
 
 23
 We are thus of the position that the facts supporting Appellants' malicious prosecution claims did not arise from a "common core of facts" surrounding Appellants' other claims, and are not "inextricably intertwined" with all the other facts of the case in the manner we described in Abshire, 830 F.2d at 1283. To establish the tort of malicious prosecution under South Carolina law, a plaintiff must show: (1) the institution or continuation of original judicial proceedings; (2) by or at the instance of the defendant; (3) termination of such proceedings in plaintiff's favor; (4) malice in the instituting or continuing of such proceedings; (5) lack of probable cause; and (6) resulting injury to the plaintiff. Eaves v. Broad River Elec. Coop., Inc., 277 S.C. 475, 289 S.E.2d 414, 415 (1982). Essentially, malicious prosecution in violation of section 1983 is malicious prosecution resulting in a constitutional deprivation. Goodwin v. Metts, 885 F.2d at 160 n. 1. When viewed in connection with all the facts of this case, these elements make clear that Maxwell was found liable only for the conduct of concealing evidence which exculpated Goodwin and Hallman of the Bishop break-in. And as previously noted, Metts was found liable only in a vicarious capacity for the misconduct of Maxwell. Unlike the defendants in Abshire v. Walls, 830 F.2d 1277, 1282-83 (4th Cir.1987), Maxwell and Metts therefore were not found liable on conduct factually inseparable from facts which might have supported Appellants' other claims. Appellants' attorneys could have isolated the inquiry into the lawfulness of the prosecution of the Appellants from the other facts of the case. In other words, Appellants' attorneys could easily have presented evidence establishing each element of Appellants' malicious prosecution claims without developing the facts surrounding the entire sequence of events from the arrest of Goodwin and Hallman to their acquittal. We therefore find that, under Hensley, 461 U.S. at 434, 103 S.Ct. at 1939, Appellants' unsuccessful claims were unrelated to their successful malicious prosecution claims. Accordingly, we affirm the district court's determination that attorney hours devoted to the matters raised in the district court on which the plaintiffs did not ultimately prevail are not compensable under section 1988. (See J.A. at 317.)
 
 B.
 
 24
 For guidance on Appellants' contention that the district court erred in reducing the allowable attorneys' hours due to the duplication of effort resulting from the association of new lawyers and from the use of three to four lawyers in the action when one or two would have sufficed, we look to our prior decision in Spell v. McDaniel, 852 F.2d 762, 769 (4th Cir.1988). After observing in Spell that plaintiff's "petition presents such an inflated expenditure of time that it is impossible for this court to cull the justified from the unjustified," we reduced allowable attorneys' hours for representing Spell on appeal from 1,431.1 to 420. 852 F.2d at 767. In reviewing several particulars of an itemized bill which the six attorneys who represented Spell on appeal presented for their services, including "[a]dditional hours [the attorneys] spent discussing the issues amongst themselves," and "extensive conferences regarding these ... issues," id. at 768, this court stated,
 
 
 25
 We find that it is necessary to substantially reduce these hours to account for the duplication of effort from the trial level, and the overstaffing and overkill that is characteristic of the entire fee petition....
 
 
 26
 ... We have already observed that it is inappropriate to charge defendants for duplicative endeavors and overkill on the part of newly acquired counsel.
 
 
 27
 Spell, 852 F.2d at 769.
 
 
 28
 While the court thus addressed a civil rights plaintiff's petition for attorneys' fees incurred on appeal, these principles we enunciated in Spell, 852 F.2d at 763-69, are no less applicable on review of a district court's determination of the proper number of attorney hours expended before the district court. And, in making this review, we are mindful of the Supreme Court's reemphasis in Hensley "that the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what are essentially factual matters." 461 U.S. at 437, 103 S.Ct. at 1941. We are further mindful that the burden is on the party seeking the fee award to establish the reasonableness of the hours spent. Id.
 
 
 29
 As the district court noted in its decision, four attorneys, Louthian, Delgado, Rogerson, and Derfner, represented Goodwin and Hallman before the district court, and claimed 291.1, 704.2, 650.0, and 34.9 hours, respectively, for their efforts at the trial level. (J.A. at 316 n. 2.) The district court here found that new lawyers were required to spend time becoming familiar with the facts and law of Appellants' case. (J.A. at 317.) This process, no doubt, entailed some hours of discussions, conferences, or other communications among lawyers similar to those we observed in Spell, 852 F.2d at 768. Moreover, our prior reference to the plaintiff's six attorneys as "overstaffing" in Spell, 852 F.2d at 769, leads us to believe that the district court properly ascertained that one or two lawyers would have sufficed for Appellants Goodwin and Hallman, as opposed to the four employed.
 
 
 30
 The Fourth Circuit in Spell ultimately reduced the allowable hours claimed for the six lawyers who represented Spell on appeal by approximately sixty-percent (60%). See 852 F.2d at 768. Bearing in mind, first, the similarity of the reasons the district court offered for the reduction here, i.e., the time that new lawyers spent becoming familiar with the facts and law of the case, and overstaffing of attorneys, to the reasons this court listed for the reduction in Spell, and second, the proportions of our reduction in allowable attorney hours in Spell, 852 F.2d at 768-69, we cannot say that the district court abused its discretion in ruling that duplication of effort by the Appellants' attorneys constituted a proper basis for reducing the fees claimed for representation before the district court by approximately fifty-percent (50%).
 
 III.
 
 31
 We next address Appellants' contention that the district court erred in allowing as compensable only 320 of the 647 attorney hours which Goodwin and Hallman claim were expended on the appeal of the malicious prosecution verdicts which the Appellants obtained against Maxwell and Metts in the underlying action. Of attorney hours claimed for the appeal, the district court stated,
 
 
 32
 The appeal presented no novel issue of fact or law. While all the defendants asserted numerous grounds for appeal, they were all previously addressed at least once in the motions before, during or after trial. Those counsel who participated in the action up through the post-trial motions should have been thoroughly familiar with both the material facts and the legal principles ... involved. The appeal, therefore should have required little if any additional legal research or factual inquiry. In addition, the plaintiffs are not entitled to compensation for hours devoted to the punitive damage appeal because they did not prevail on that issue. Finally, as at the trial level, the association of four lawyers, rather than one or two, resulted in some duplication of effort. For these reasons, the court finds 320 hours represents a more reasonable number....
 
 
 33
 (J.A. at 319-320.)
 
 
 34
 Goodwin and Hallman argue that the district court erred in its determination of the compensable attorney hours expended on appeal because the district court mistook the Appellants' 647 hour figure as the number of hours spent on the "basic appeal, and apparently overlooked the rehearing petition, certiorari petition, and attorney fee petition...." (Appellants' Br. at 27.) We simply can find no support for this argument in the district court decision. The district court expressly stated that it established fees "of $140,425.00 for all work performed at both the trial and appellate levels." (J.A. at 320) (emphasis added). A plain reading of this language indicates that the district court considered the rehearing petition, certiorari petition, and attorney fee petition in its computation of the hours compensable for work at the appellate level.
 
 
 35
 Beyond this, the reasons the district court offered for the disallowance of attorney hours at the appellate level are well-founded in prior case law. In Spell v. McDaniel, this court found that, because "the amounts charged to [plaintiff] Spell by his multiple appellate counsel represent a vast duplication of endeavors already performed at the trial level," a substantial reduction in the hours the plaintiff claimed for attorneys' work on appeal was warranted. 852 F.2d 762, 763-64 (4th Cir.1988). The district court could therefore properly disallow a number of attorney hours claimed for the appeal based on the fact that the most of the issues presented at the appellate level were thoroughly addressed in the district court. Since the Appellants did not achieve success on their punitive damages claim, the district court could also properly determine the Appellants should not be compensated for the hours expended on that claim. See Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). Finally, as we have noted, "overstaffing" an appeal with four lawyers when one or two competent lawyers would suffice is a sound basis for disallowing attorney hours spent at the appellate level. See Spell, 852 F.2d at 769.
 
 
 36
 We again observe that, in making an award of attorneys' fees, the district court "necessarily has discretion in making this equitable judgment." Hensley, 461 U.S. at 436-37, 103 S.Ct. at 1941. As with the district court's disallowance of approximately fifty-percent (50%) of the attorney hours which Appellants claimed for work before the district court, we cannot say that the district court abused its discretion in disallowing a similar portion of the attorney hours claimed for work at the appellate level.
 
 IV.
 
 37
 Finally, we turn to Appellee Vernon O. Maxwell's contention on cross-appeal that the district court erred in failing to limit Appellants' attorneys fees to the amount prescribed in the Goodwin's and Hallman's fee arrangement with their attorneys. As Appellee Maxwell asserts, the verdict which Goodwin and Hallman obtained for the section 1983 violation was based on a state law tort, malicious prosecution, which also resulted in a constitutional deprivation. See, e.g., Goodwin v. Metts, 885 F.2d at 160 n. 1. Maxwell argues that the $150,000 in compensatory damages which Goodwin and Hallman received on the state law and section 1983 malicious prosecution verdicts was therefore more in the nature of an award for tortious personal injury than an award for the vindication of civil rights. Consequently, Maxwell continues, Appellants' attorneys fees should be limited to forty-percent (40%) of Appellants recovery, as specified in a routine contingent-fee arrangement, (J.A. at 215, 254), which Goodwin and Hallman entered with their attorneys.
 
 
 38
 We are unpersuaded by Maxwell's argument. The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, authorizes the court to make an award of reasonable attorneys' fees to the prevailing party in any action to enforce the provisions of section 1983. E.g., Spell v. McDaniel, 852 F.2d 762, 765 (4th Cir.1988) (quoting 42 U.S.C. § 1988). The language of section 1988 nowhere indicates that a determination that conduct causing the constitutional deprivation under 42 U.S.C. § 1983 also amounts to tortious misbehavior under state law should affect the court's award of attorneys' fees. Furthermore, the Supreme Court has ruled that a civil rights plaintiff's contingent-fee agreement with counsel may not operate as a limitation on a court's award of fees pursuant to 42 U.S.C. § 1988. In Blanchard v. Bergeron, the Court stated,
 
 
 39
 It should also be noted that we have not accepted the contention that fee awards in § 1983 damages cases should be modeled upon the contingent-fee arrangements used in personal injury litigation....
 
 
 40
 ... It is central to the awarding of attorney's fees under § 1988 that the district court judge, in his or her good judgment, make the assessment of what is a reasonable fee under the circumstances of the case. The trial judge should not be limited by the contractual fee agreement between plaintiff and counsel.
 
 
 41
 The contingent fee-model, premised on the award to an attorney of an amount representing a percentage of the damages, is ... inappropriate for the determination of fees under § 1988. The attorney's fees provided for in a contingent-fee agreement is not ceiling upon the fees recoverable under § 1988.
 
 
 42
 489 U.S. 87, 96, 109 S.Ct. 939, 945, 103 L.Ed.2d 67 (1989). Simply put, we find that the plain language of 42 U.S.C. § 1988 and the Supreme Court's holding in Blanchard, 489 U.S. at 96, 109 S.Ct. at 945, mandate rejection of Maxwell's argument here.
 
 
 43
 For all of the foregoing reasons, the district court order disallowing approximately fifty-percent (50%) of the Appellants' claimed attorneys' fees is hereby
 
 
 44
 AFFIRMED.
 
 
 
 [1]
 Section 1983 provides in pertinent part, "Civil action for deprivation of rights--Every person who, under color of any statute ... of any State ... subjects ... any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable at law...." 42 U.S.C. § 1983 (1988)
 
 
 [2]
 As the Fourth Circuit observed in Spell v. McDaniel,
 The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, provides that in federal civil rights actions such as the underlying action brought pursuant to 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of costs." ... However, the burden of establishing entitlement to a fee award is upon the fee applicant.
 852 F.2d 762, 765 (4th Cir.1988) (quoting 42 U.S.C. § 1988 (1988)).
 
 
 [3]
 Abshire was acquitted on the disorderly conduct charge on September 2, 1982. 830 F.2d at 1279 n. 3
 
 
 [4]
 Though unaware of the Stafford confession, the Lexington County Solicitor nevertheless refused to allow any member of his office to prosecute the case, due to the perceived weakness of the evidence against Goodwin and Hallman. The case against Goodwin and Hallman was ultimately prosecuted by a special prosecutor, an attorney who previously represented Bishop in civil matters. 885 F.2d at 159