**James Randall STACY, Plaintiff,**

v.

**B.Q. STROUD, et al., Defendants.**

### Civ. A. No. 3:91–1145.

United States District Court,
S.D. West Virginia,
at Huntington.

July 27, 1993.

Carter S. Zerbe, Michael Kelly, Charleston, WV, for plaintiff.

R. Carter Elkins, Laura L. Gray, Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Huntington, WV, for defendants.

## MEMORANDUM OPINION AND ORDER

STAKER, District Judge.

This matter is before the court on plaintiff's application and petition for attorneys' fees.

### STATEMENT OF THE CASE

In Mingo County, West Virginia, during the early hours of November 19, 1989, James Randall Stacy was arrested for driving under the influence ("DUI"). At the county jail, during booking procedures, an altercation took place, resulting in injuries to Stacy. On November 14, 1991, Stacy filed suit against various Mingo County officials, alleging violations of his civil rights.

Named in the original suit were: Mingo County Sheriff Gerald Chafin, Mingo County Deputy Sheriffs B.Q. Stroud, R.C. Justice, James Pack and Robin B. Findley, Mingo County Sheriff's Department correctional officers J.R. Hensley and Eugene Crumb, Mingo County Chief Correctional Officer Harley Dempsey, Jail Administrator William "Mooch" Justice, (all of the above named individually and in their official capacity), the Mingo County Sheriff's Department and Mingo County Commissioners Larry Cline, Curtis Fletcher, Jim Hatfield, Ronald Rumora, and their successors.

The complaint alleged violations of 42 U.S.C. §§ 1983, 1985 and 1988, as well as violations of the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments.

The court granted summary judgment in favor of Harley Dempsey and granted summary judgment for all defendants with regard to the First and Sixth Amendment claims. The plaintiff voluntarily dropped all claims against Jim Hatfield and all claims based on supervisory liability, failure to train, and 42 U.S.C. § 1985.

On July 7, 1992, the parties assembled for trial. Before trial commenced, and on plaintiff's motions, defendants Gerald Chafin, Harley Dempsey, William Justice and Jim Hatfield were dismissed. A jury was thereafter empaneled and the case proceeded to trial on the remaining claims with the remaining defendants. At the close of plaintiff's evidence, on defendants' unopposed motions, the court dismissed defendants James Pack, Eugene Crumb, the Mingo County Sheriff's Department, Larry Cline, Curtis Fletcher and Ronald Rumora. On July 11, 1992, the jury returned a special verdict.

The jury found that B.Q. Stroud had used excessive force against Stacy and that B.Q. Stroud and J.R. Hensley had shown deliberate indifference to Stacy's serious medical needs. The jury did not find that defendants R.C. Justice and R.B. Findley had engaged in any wrongdoing. Stacy was awarded $4147.25 for medical costs and pain and suffering.

Stacy's attorney thereafter submitted a petition and application for attorneys' fees in accordance with the Civil Rights Attorney's Fee Act of 1976. The defendants responded,

the plaintiff replied and the defendants responded to the reply. A hearing was held on October 13, 1992, and the parties were given leave to submit additional briefs, which they did. The defendants also filed another supplemental brief on January 5, 1993. The matter is now mature for this court's consideration.

## ANALYSIS

### I. Determining the Lodestar

The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C.A. § 1988 (West 1981 & 1993 Supp.), provides, in pertinent part, that:

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or Title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

*Id.* at § 1988(b).

### A. Prevailing party

■ Attorneys' fees may only be awarded to parties who have prevailed on the merits of their case. *Hanrahan v. Hampton,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980). Therefore, the court must first determine whether the party requesting a fee award is the prevailing party. The Supreme Court has held that " '[t]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties.' " *Farrar v. Hobby,* —— U.S. ——, ——, 113 S.Ct. 566, 573, 121 L.Ed.2d 494, 503 (1992) (quoting *Texas State Teachers Ass'n v. Garland Indep. School Dist.,* 489 U.S. 782, 792–93, 109 S.Ct. 1486, 1493–94, 103 L.Ed.2d 866 (1989)). A civil rights plaintiff must obtain some relief on the merits of his or her claim through an enforceable judgment, consent decree or settlement. *Farrar v. Hobby,* —— U.S. at ——, 113 S.Ct. at 573, 121 L.Ed.2d at 503. The plaintiff in the case at hand received an enforceable judgment and is, therefore, a prevailing party. The court will accordingly consider whether or not the plaintiff should receive attorneys' fees.

### B. Court's discretion

■ An award of attorneys' fees falls within the trial court's discretion. *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). In determining a fee award, the court begins by multiplying a reasonable number of hours by a reasonable hourly fee to arrive at the lodestar figure. *See id.* at 433, 103 S.Ct. at 1939. The court may consider twelve factors in determining the lodestar figure:

(1) the time and labor required;

(2) the novelty and difficulty of the questions;

(3) the skill requisite to properly perform the legal service;

(4) the preclusion of other employment by the attorney due to acceptance of the case;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation and ability of the attorneys;

(10) the "undesirability" of the case;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.

*Daly v. Hill,* 790 F.2d 1071, 1075 n. 2, 1077 (4th Cir.1986) (citing *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974)) (the *"Johnson* factors").

### C. "Special circumstances"

The defendants argued that, even if the court determines that the plaintiff is the prevailing party, "special circumstances" preclude the award of attorneys' fees, citing, among other cases, *Zarcone v. Perry,* 581 F.2d 1039 (2d Cir.1978), *cert. denied,* 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979). The cases cited by the defendants, however, involve unusual facts which provide no appropriate analogies to the situation at hand. The defendants asserted that this was a private action brought only to benefit the plaintiff. The defendants claimed that no public benefit is implicated in this matter at all.

Therefore, "special circumstances" require the court to deny Stacy's request for attorneys' fees in its entirety.

The defendants have utterly disregarded the jury verdict. The jury found here that Mingo County officers used excessive force against the plaintiff and showed deliberate indifference to his serious medical needs. The jury determined that public officials acting under color of state law deprived the plaintiff of his federally-protected civil rights. The conduct of public officials is an important public concern. Citizens and taxpayers necessarily benefit when public servants are deterred in their efforts to exceed their lawful authority. *See Gonzales v. Jillson*, 642 F.Supp. 908, 909 (D.Mass.1986) (noting the important public interests vindicated in police brutality cases). The defendants' argument is without merit.

### D. Proportionality

█ The defendants further argued that the plaintiff is not entitled to a fee award because he received only nominal or *de minimis* damages, citing *Farrar v. Hobby*, — U.S. ——, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). The plaintiff received over $4,000 and his damages cannot be characterized as technical, nominal, or *de minimis*. As discussed above, the suit here implicated important public concerns and the damages sought need not be proportionate to the damages eventually obtained. Moreover, the fee award need not be proportionate to the damages. *See Wallace v. Mulholland*, 957 F.2d 333, 339 (7th Cir.1992); *Cowan v. Prudential Ins. Co.*, 935 F.2d 522, 527 (2d Cir.1991) (collecting cases); *Cooper v. Dyke*, 814 F.2d 941, 951 (4th Cir.1987) (citing *Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986)).

### E. *Johnson* factors

█ More importantly, consideration of the twelve factors used in the fee award analysis should serve to eliminate those cases in which attorney's fees are not warranted. The court will review those twelve factors in determining the fees, if any, which should be awarded in this matter.

**(1) Time and labor expended:** The plaintiff's attorneys, Mr. Zerbe and Mr. Kelly, submitted itemized schedules of their hours and expenses. They adjusted their requests in a number of instances in response to the defendants' objections. The court has reviewed the specific items contained in the fee requests and any amendments or objections thereto in determining which requests are proper. The court has prepared appendices which appear at the end of this opinion. *See* Appendix A (Zerbe hours), Appendix B (Kelly hours) and Appendix C (Expenses). In the interests of clarity and convenience the court has consolidated the fee petition with any supplements thereto. The court has also indicated the extent to which the specific items requested will be awarded. Discussion of specific items will be left to parts II and III of this opinion.

**(2) The novelty and difficulty of the questions:** There is no indication that this case was any more or less complicated than any other average civil rights case.

**(3) The skill required to properly perform the legal services rendered:** This case required an average, but not an inordinate, degree of skill and familiarity with civil rights law and practice. Both Mr. Zerbe and Mr. Kelly are skilled and experienced civil rights attorneys. They submitted affidavits which attest to their work in this field. They are sufficiently skilled and experienced to command the market rate with no reduction, but are not so well known or expert that they are entitled to a higher rate.

**(4) The preclusion of other employment by the attorney due to acceptance of the case:** Mr. Zerbe and Mr. Kelly both have private practices. Both attorneys were either precluded from accepting other employment, or unable to spend time on other client matters during the hours they spent working on this case.

█ **(5) The customary fee:** A fee award is calculated using the prevailing market rate. *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). The burden falls on the fee applicant to establish the reasonableness of the requested rate. *Id.* at 895–96 and n. 11, 104 S.Ct. at 1547 n. 11. The applicant must

produce evidence indicating the market rate prevailing within the "relevant community" for the type of work at issue. *See id.; See also Spell v. McDaniel,* 824 F.2d 1380, 1402 (4th Cir.1987) (*Spell I* ), *cert. denied,* 484 U.S. 1027, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988).

Mr. Zerbe submitted his own affidavit and the affidavits of several other attorneys who customarily practice within the Southern District of West Virginia. Mr. Zerbe and two of those attorneys indicated that they charge $125 per hour for civil rights cases and understand that rate to be the fair market rate. One attorney indicated he would charge a higher rate for cases against police officers. Another local attorney averred that his fee in civil rights cases is now $150 per hour.

Mr. Zerbe, the lead attorney, requested a fee of $125 for his work on this case. The defendants objected to his request and argued that a lower rate would be more appropriate. However, the defendants submitted no evidence, in the form of affidavits or otherwise, to support their objection, and the court holds it has no merit. *See United Steelworkers v. Phelps Dodge Corp.,* 896 F.2d 403, 407 (9th Cir.1990). Mr. Zerbe's requested fee of $125 per hour is therefore deemed a reasonable fee in this locale for the work he has performed in this matter.

Mr. Kelly requested a fee of $75 per hour. Mr. Kelly indicated that he normally charges between $65 and $125 per hour for comparable civil rights cases. In this matter he requested a fee at the low end of his billing range because of his lesser role in the proceedings. Mr. Kelly assisted with research and negotiations in the later stages of the litigation, and occupied second chair at trial. There is no support for defendants' argument that Mr. Kelly's fee should be limited to $50 per hour. The court finds that the requested hourly rate is eminently reasonable and indicative of Mr. Kelly's good billing judgment. Accordingly, $75 per hour is a reasonable hourly rate in this locale for Mr. Kelly's services.

**(6) Whether the fee is fixed or contingent:** Mr. Zerbe indicated that he and his client arrived at a contingent fee arrangement. Presumably Mr. Kelly's fee arrangement was also contingent.

**(7) Time limitations imposed by the client or the circumstances:** Other than the statute of limitations, there were no time constraints to which plaintiff's attorneys were subject.

**(8) The amount involved and the results obtained:** The most complicated and difficult aspect of this fee petition is determining the effect this factor should have on any fee award.

### (a) Common core of facts

The Supreme Court has held that, in cases involving separate claims based on distinctly different facts and legal theories, no fees should be awarded for unrelated, unsuccessful claims. *Hensley v. Eckerhart,* 461 U.S. at 435, 103 S.Ct. at 1940. However, the Court acknowledged that cases involving unrelated claims are "unlikely to arise with great frequency." *Id.* Oftentimes,

> the plaintiff's claims for relief will involve a common core of facts ·or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Id.*

The Fourth Circuit addressed the issue of unrelated claims in *Abshire v. Walls,* 830 F.2d 1277, 1282–83 (4th Cir.1987). In the early morning hours, police officers found Abshire lying in the street, unconscious from a fall. Abshire was arrested, taken into custody, and then strip searched when he objected to his arrest and subsequent treatment. Abshire sued six officers and their police chief, alleging false arrest, false imprisonment, malicious prosecution, an unconstitutional strip search in violation of 42 U.S.C. § 1983 and conspiracy in violation of 42 U.S.C. § 1985. The plaintiff prevailed against only three officers on the strip search claim alone. The district court ruled that Abshire could not recover attorneys' fees on

his other claims because they were unrelated to his successful § 1983 claim, but the Fourth Circuit reversed.

The Fourth Circuit found that, although Abshire's claims were based on separate legal theories, they all arose from a common core of facts. The facts supporting his successful strip search claim were "inextricably intertwined with the facts surrounding his initial confrontation with the police, his arrest and later imprisonment." *Abshire*, 830 F.2d at 1283. The court found that Abshire's attorney could not have pressed the successful claim without developing and presenting the entire incident. Thus, the claims were not unrelated for purposes of the attorney fee inquiry. *See also Goodwin v. Metts*, 973 F.2d 378, 381–83 (4th Cir.1992) (upholding continued validity of *Abshire* but concluding that plaintiffs' claims did not arise from common core of facts).

The facts in the case at hand closely resemble those in *Abshire*. Stacy's initial encounter with the Mingo County deputy, his subsequent arrest and the altercation at the jail were all part of a single sequence of events during the early hours of November 19, 1989. Stacy's attorneys were required to develop the entire sequence in order to provide a context for any of the claims set forth in the complaint. Significantly, that sequence of events occurred during a short time, the space of only several hours. In *Goodwin v. Metts*, wherein the Fourth Circuit found no common core of facts, the conduct complained of stretched over time and involved a number of discrete incidents.

Accordingly, the court finds that the claims asserted here arose from a common core of facts. The unsuccessful claims cannot be isolated from the successful claims in order to determine which particular claims should be considered in awarding attorneys' fees. Instead, the court will follow the practice the Supreme Court advised in *Hensley* and "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *See also Abshire*, 830 F.2d at 1282–83.

### (b) "Results obtained"

Some circuits adjust the lodestar upward or downward depending upon the re-

sults obtained. *See Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir.1990). The Fourth Circuit expressly disapproved of this practice, stating that applying the *Johnson* factors after the lodestar is calculated can lead to double counting. *Daly v. Hill*, 790 F.2d 1071, 1077 (4th Cir.1986). "The proper point at which the *Johnson* factors are to be considered is in determining the reasonable rate and the reasonable hours." *Id.* at 1078. If the lodestar is properly calculated, adjustment should be unnecessary. *Id.*

In *Buffington v. Baltimore County*, 913 F.2d 113, 126, 128–29 (4th Cir.1990), *cert. denied*, 499 U.S. 906, 111 S.Ct. 1106, 113 L.Ed.2d 216 (1991), the Fourth Circuit offered some guidance for those cases in which the plaintiff meets with limited success for claims which arose from a common core of facts. The Fourth Circuit reviewed a district court ruling that was primarily a victory for the civil rights plaintiffs. In light of the plaintiffs' success, the district court had also granted the plaintiffs' motion for attorneys' fees, with only modest reductions from the requested amount. The Fourth Circuit reversed the ruling in part on some substantive issues and remanded the case for reconsideration of, among other things, the fee award.

The circuit court noted that the district court would first have to decide whether the now unsuccessful claims were separable from the successful claims, or whether they arose from a common core of facts. Even if the claims were deemed "'inextricably intermingled,'" *id.* (quoting *Plyler v. Evatt*, 902 F.2d 273, 280 (4th Cir.1990), the district court would be required to reassess the "'significance of the overall relief obtained ... in relation to the hours reasonably expended on the litigation.'" *Id.* at 128 (quoting *Hensley v. Eckerhart*, 461 U.S. at 435, 103 S.Ct. at 1940). The Fourth Circuit said it doubted that a fully compensatory award would be appropriate under the new circumstances, namely, the limited success obtained by the plaintiff.

With the foregoing principles concerning the "results obtained" in mind, the court has conducted the following calculations: First, the court determined which hours were prop-

erly documented and charged to this matter. *See* Appendix A (Zerbe hours) and Appendix B (Kelly hours). Second, the court reduced those amounts by fifty percent. This fifty percent award properly compensates the plaintiff for successfully pursuing his excessive force and deliberate indifference claims, with an appropriate reduction for his related, but unsuccessful, claims arising out of the common core of facts.

**(9) The experience, reputation and ability of the attorney:** As their affidavits indicated, Mr. Zerbe and Mr. Kelly are experienced civil rights attorneys, but not so experienced or well-known that they are entitled to an enhanced fee. Naturally, they are sufficiently experienced to command the market rate without reduction. *See also Johnson* factor three above.

**(10) The "undesirability" of the case:** Affidavits submitted by local attorneys in support of the fee petition indicated that civil rights cases asserted against law enforcement officials are particularly undesirable. The defendants submitted no evidence contradicting these statements.

**(11) The nature and length of the professional relationship with the client:** Mr. Zerbe has maintained a professional relationship with the plaintiff since he was retained to represent him for the DUI charge which arose out of the same incident which prompted this lawsuit.

**(12) Awards in similar cases:** The court is guided by the customary market rate awarded in civil rights cases. *See Johnson* factor five. The court is further aided by the ruling in *Buffington v. Baltimore County,* 913 F.2d 113, 126, 128–29 (4th Cir.1990), *cert. denied,* 499 U.S. 906, 111 S.Ct. 1106, 113 L.Ed.2d 216 (1991) discussed above. *See Johnson* factor eight. The court is not aware of any directly analogous case which would reveal a particular dollar amount appropriate to the case at hand, although the court would welcome reference to such a case.

### F. Computation of the award for hours "reasonably expended"

After considering all the factors involved, the court has determined the appropriate lodestar figure for each attorney. Unless previously noted, none of the *Johnson* factors should affect either the "reasonable number of hours" or the "reasonable hourly fee."

Mr. Zerbe originally requested $32,190 (adjusted for mathematical errors and modifications to the original fee petition). Mr. Zerbe had voluntarily reduced his lodestar by twenty percent, in recognition of the limited success of the relief obtained. According to the court's calculations, Mr. Zerbe spent 318.5 compensable hours on this matter. Reducing that number by half, to account for plaintiff's unsuccessful claims, results in 159.25 hours which were reasonably expended on this litigation. The reasonable hourly fee which Mr. Zerbe may charge is $125 per hour. Multiplying 159.25 by $125 yields $19,906.25. The plaintiff is entitled to recover $19,906.25 from the defendants for Mr. Zerbe's services.

Mr. Kelly requested $5,493.75 (adjusted for modifications to the original petition). Mr. Kelly spent 73.25 compensable hours on this matter. Reducing that number by half results in 36.63 hours which were reasonably expended on this litigation. The hourly rate which Mr. Kelly may charge for this matter is $75. Multiplying 36.63 by $75 yields $2747.25. The plaintiff shall recover $2747.25 from the defendants for Mr. Kelly's services.

## II. Hours

Carter Zerbe's hours are itemized in Appendix A and Mike Kelly's hours are itemized in Appendix B. For the sake of clarity and convenience, any supplements to the original petition have been incorporated into the appendices. The defendants asserted numerous objections to the fee requests.

### A. Mathematical errors

The defendants objected to several mathematical errors committed by the plaintiff in computing the total fee award requested. The court has recalculated the award and

those errors to which the defendants objected are no longer at issue.

### B. Time spent on earlier proceedings

■ The defendants objected to charges for several items which they asserted were related to the plaintiff's DUI charge, not to the § 1983 action. The defendants claimed that the work was done before the § 1983 suit was even filed and is not compensable. In *Webb v. Dyer,* 471 U.S. 234, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985), the Court stated that attorney time is compensable under § 1988 when it is reasonably expended on the civil rights litigation. Some services performed before suit is filed are reasonably expended on the litigation, such as "the work associated with the development of the theory of the case." *Id.* at 243, 105 S.Ct. at 1928. The Court suggested that work done during an earlier proceeding might be compensable if it were "both useful and of a type ordinarily necessary to advance the civil rights litigation...." *Id. See also North Carolina Dept. of Transp. v. Crest Street Community Council, Inc.,* 479 U.S. 6, 15, 107 S.Ct. 336, 341, 93 L.Ed.2d 188 (1986) (stating that fees may be recoverable for work done during earlier administrative proceedings).

Lower courts have held that fees may be recovered for work done in connection with a related proceeding to the extent that it " 'proved directly relevant to the successful prosecution of the later civil rights' action." *McDonald v. Armontrout,* 860 F.2d 1456, 1462 (8th Cir.1988) (quoting *Perkins v. Cross,* 728 F.2d 1099, 1100 (8th Cir.1984)). In *Fletcher v. O'Donnell,* 729 F.Supp. 422, 429 (E.D.Pa.1990), the court echoed the language above, and found an additional reason for awarding fees for time spent on an earlier proceeding. Had plaintiff's attorney not been familiar with the case, he would have been required to devote considerable time to perusing the file from a related matter. Thus, the court found it reasonable to allow a portion of that time to be billed to the civil rights litigation.

Stacy argued that the specific items billed were directly relevant to the civil rights litigation. Stroud's testimony from the Department of Motor Vehicles ("DMV") hearing was used to discredit his testimony at trial; photos taken during this time were used at trial; and medical records acquired were used at trial. More importantly, information gained during the initial interviews with the client and witnesses was necessary to the § 1983 suit and investigations undertaken during this time were likewise necessary in prosecuting the civil rights action. As plaintiff argued, the fact that the information gained was relevant to the criminal charge as well as the civil rights suit is no reason to disallow the time expended.

Defendants' objections with regard to this issue are unavailing. The court finds that, although some of the attorney hours were arguably expended on the earlier proceeding, they are directly relevant to the civil rights litigation and are properly compensable. In arriving at this conclusion, the court is mindful that Mr. Zerbe was extremely selective in billing those hours spent on the earlier proceeding. Had he been less selective, the court would be less willing to award the hours requested.

### C. Specificity

■ The court has carefully reviewed the defendants' objections to what defendants referred to as a lack of specificity in the plaintiff's petition. Reviewing the petition as a whole, the court finds that all entries are sufficiently clear and specific and provide adequate documentation that the hours worked are neither excessive, redundant nor otherwise unnecessary. *See Hensley,* 461 U.S. at 433–34, 103 S.Ct. at 1939–40. It is always possible to provide greater detail; the question is whether sufficient detail is offered to support the claim that the time requested was " 'reasonably expended.' " *Id.* at 434, 103 S.Ct. at 1940 (internal quotations omitted). *See also Daly v. Hill,* 790 F.2d at 1079 (holding that "minutely detailed records" are not required to support a fee petition). Also, in several instances, the plaintiff responded to the objections by amending and clarifying his original requests.

■ One objection prompted special concern. In four instances, the petition listed

only a partial date. It included the month and year, but omitted the day. Incomplete time records like this are viewed with great disfavor and would ordinarily be disallowed. However, in this instance the court is persuaded to allow the time requested for two reasons. First, there were approximately 143 total time entries in Mr. Zerbe's petition and this problem affected only four of them. Second, each entry referred not to nebulous projects like research but to particular documents, such as the pretrial order, which were eventually sent to others or filed with the clerk.

### D. Meetings with co-counsel

The defendants argued that numerous meetings with co-counsel must be disallowed. This would certainly be true if those meetings were excessive or resulted in double-billing. However, conferences between attorneys, especially as trial nears, are necessary, valuable, and often result in greater efficiency and less duplication of effort, thus requiring fewer hours overall. *See Wzorek v. City of Chicago,* 739 F.Supp. 400, 403 (N.D.Ill.1990). In this instance, the defendants objected to every meeting between Mr. Kelly and Mr. Zerbe. Upon review of the petition, the court finds that the time spent in meetings with co-counsel is both reasonable and compensable.

### E. Separable claims

The defendants argued that time spent on separable, unsuccessful claims must be disallowed. The court has already dealt with this issue above. *See Johnson* factor eight. In summary, this case cannot properly be broken down into separable claims. Instead, the court has reduced the compensable hours by fifty percent to account for unsuccessful results.

### F. Excessive time

The defendants argued in numerous instances that the plaintiff's attorneys devoted excessive hours to certain projects. For instance, the defendants claimed that the 5.5 hours that Mr. Zerbe spent preparing for the plaintiff's deposition should be reduced to two hours.

The plaintiff's attorneys naturally had different priorities, strategies and litigation styles than did the defendants'. Bare assertions by the defendants that certain requests were seemingly excessive are insufficient grounds to disallow time properly spent. Upon review of the petition, the court finds that the hours the defendants objected to as excessive are well within the bounds of reason, and defendants' objections are not persuasive.

### G. Duplicate entries

In two instances, the defendants objected to what they deemed to be duplicate time entries. For example, the plaintiff's petition listed two separate entries for meetings with Dr. Crigger on 6/22/92. The obvious explanation, and that offered by the plaintiff's attorneys, is that the work could not be completed at one time, and thus required two separate time entries.

### H. Phone calls

The defendants understandably objected to the original petition, which listed 11.5 hours in a single entry for all phone calls made in connection with this case. The plaintiff supplemented his petition with a phone log, itemizing each call and reducing the time spent to 8.2 hours. The court finds that this supplement adequately responds to the defendants' objection and the court's concerns. 8.2 hours is reasonable and adequately documented and will be allowed.

### I. Mr. Kelly's hours

Many of the objections to Mr. Kelly's time entries have already been covered in the preceding sections, such as the objections regarding specificity and "duplicate" entries. The defendants also objected to other specific time entries, such as Mr. Kelly's entry for 7/2/92, wherein he listed "review points to be raised at pretrial conference." The defendants claimed he should not be allowed to charge for this time because he did not actually attend the pretrial conference. There is,

however, a very reasonable interpretation for his absence. Mr. Kelly had adequately assisted Mr. Zerbe by pointing out potential issues for the conference and his actual presence at the conference would have been superfluous.

The same reasoning applies to other objections. For example, it was not actually necessary for Mr. Kelly to examine witnesses at trial; his assistance was limited to suggesting possible weaknesses in testimony and suggesting lines of questioning, among other things. Mr. Kelly's willingness to limit his participation, and consequently his billable hours, reflects his good billing judgment and he will not be penalized for doing so.

Mr. Kelly's more limited role at trial is also reflected in his hourly rate of $75. As the affidavits indicated, this is a very low rate for civil rights attorneys. Moreover, Mr. Kelly spent the vast majority of his time on matters directly related to the trial, beginning less than two weeks before the trial commenced. In contrast, the lead attorney for the defendants had the able assistance of an associate throughout the pendency of this matter. The defendants claimed that this circumstance is irrelevant. However, in order to assess the reasonableness of the attorneys' fees requested in this matter, the court must consider, among many other factors, the demands made upon plaintiff's attorneys by the zeal and resources of the defense.

**J. Fee petition**

 Time spent preparing and defending a fee petition is compensable under 42 U.S.C. § 1988. *Ganey v. Garrison,* 813 F.2d 650, 652 (4th Cir.1987); *Daly v. Hill,* 790 F.2d 1071, 1080 (4th Cir.1986). The fee petition here was hotly contested and the time requested is minimal.

**III. Expenses**

A reasonable attorney's fee includes "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel,* 852 F.2d 762, 771 (4th Cir.1988) (*Spell II* ) (quot-

ing *Northcross v. Board of Educ. of Memphis City Schools,* 611 F.2d 624, 639 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980)); *Daly v. Hill,* 790 F.2d 1071, 1082–84 (4th Cir.1986). Expenses were apparently incurred by Mr. Zerbe and they are listed in Appendix C.

**A. Paralegal services**

 Expenses incurred for paralegal services are recoverable. *Missouri v. Jenkins,* 491 U.S. 274, 289, 109 S.Ct. 2463, 2472, 105 L.Ed.2d 229 (1989). Delegating appropriate tasks to paralegals reduces the overall costs of civil rights litigation. *Id.* at 288, 109 S.Ct. at 2471.

The plaintiff submitted an itemized accounting of the 127.5 hours expended by paralegal Crystal Harper and also an affidavit indicating that her requested hourly rate, $40, is a reasonable fee for comparable work in the relevant legal community. The plaintiff explained Ms. Harper's contributions to this litigation and asserted that her work did not duplicate Mr. Kelly's. The documentation for this expenditure is sufficient and the hours requested are reasonable, not excessive.

A mathematical error in the original petition resulted in a total request of $4,920. Ms. Harper spent 127.5 compensable hours on this matter, which multiplied by $40 actually equals $5,100.

**B. Investigative services**

 Costs for investigative services are also recoverable. *Bradley v. School Board of the City of Richmond, Virginia,* 53 F.R.D. 28, 44 (E.D.Va.1971) (Merhige, J.) (cited with approval in *Daly v. Hill,* 790 F.2d at 1083 and *Wheeler v. Durham City Board of Educ.,* 585 F.2d 618, 624 (4th Cir.1978)).

**C. Expert witness fees**

 Stacy submitted a charge for expert witness fees for Dr. Charles Crigger and Dr. Hawey Wells. The defendants argued, and the plaintiff eventually conceded, that expert fees are not recoverable in this matter. 42

U.S.C. § 1988(c) provides that, "[i]n awarding an attorney's fee under subsection (b) of this section in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee." So although expert fees may be recoverable in some civil rights cases, they are not recoverable in section 1983 cases, such as the one at hand. However, any experts who actually testify may receive a witness fee in accordance with 28 U.S.C. §§ 1821 and 1920 and Fed.R.Civ.P. 54(d). Court records indicate that Dr. Crigger testified on July 7, 1992, and Dr. Wells testified on July 11, 1992. Therefore, the plaintiff shall recover $40 for each witness. 28 U.S.C. §§ 1821(b) and 1920(3).

### D. Photocopies

The defendants objected to the amount expended upon photocopies. The court finds that the copying expenses, while regrettable, are reasonable given the amount of paper generated in this case. *See Daly v. Hill*, 790 F.2d at 1083 (citing *Wheeler v. Durham City Bd. of Educ.*, 585 F.2d 618, 623–24 (4th Cir. 1978)).

### E. Phone calls

The defendants objected to the original, one-item charge for long distance calls. The plaintiff later submitted an itemized list of phone calls, charging a lesser amount, which the court finds responds adequately to defendants' objection. *Id. See also* part II(H).

### F. Photographs

The photographs to which the defendants objected were used by the plaintiff and his counsel to prepare for trial and to prepare a trial exhibit. That is sufficient justification for their cost.

### G. Transcripts

 Costs for transcripts for hearings and depositions are precisely the sort of out-of-pocket expenses attorneys normally charge to fee-paying clients. The defendants did not object to this basic assumption, but argued instead that certain of these costs should not be compensable.

The defendants first objected to the costs associated with the transcript of the DMV hearing because it resulted from an earlier proceeding. That transcript was used by the plaintiff at trial to cross-examine Deputy Stroud and was properly charged to this matter. *See* part II(B) above. The defendants also objected to the transcript charges for depositions of Sheriff Chafin and Deputy Cook. Sheriff Chafin was originally named as a defendant and Deputy Cook was a witness to the incident which gave rise to this suit. Deposing them was a reasonable and prudent expenditure of time and money. It was not necessary, as defendants suggested, to actually call them as witnesses at trial to justify the expense.

### H. Miscellaneous

The court has carefully reviewed the claims for out-of-pocket expenses. Postage, mileage and all other items listed on Appendix C which are not specifically discussed above are deemed reasonable. *See Daly v. Hill*, 790 F.2d at 1083 (citing *Wheeler v. Durham City Bd. of Educ.*, 585 F.2d 618, 623–24 (4th Cir.1978)).

### I. Total expenses

The plaintiff originally requested 16,015.23 (corrected for mathematical errors and modifications to the fee petition) in out-of-pocket expenses. The court finds that the reasonable, compensable expenses total $10,788.34. The plaintiff may therefore recover $10,-788.34 from the defendants for this portion of the attorneys' fees allowable under section 1988.

### CONCLUSION

Upon review and consideration of plaintiff's petition and application for attorneys' fees, the court awards the following: The plaintiff shall recover from the defendants $19,906.25 for Mr. Zerbe's legal services, $2,747.25 for Mr. Kelly's legal services and $10,788.34 for Mr. Zerbe's out-of-pocket expenses.

## APPENDIX A

### HOURS for CARTER ZERBE

| DATE | SERVICES RENDERED | TIME REQUESTED | TIME ALLOWED |
|------|-------------------|----------------|--------------|
| 12/04/89 | Initial Interview Stacy and Witness | 3.2 | 3.2 |
| 01/09/90 | Letter to Logan Medical Foundation, Inc. | .1 | .1 |
| 02/26/90 | Meeting with witnesses, travel from Charleston to Gilbert Williamson, DMV hearing | 10.3 | 10.3 |
| 05/17/90 | Letter to C/J Logan General Hospital | .1 | .1 |
| 05/22/90 | Meeting with client More photographs | 2.2 | 2.2 |
| 11/10/90 | Meeting with client and witnesses | 2.5 | 2.5 |
| 08/03/91 | Meeting with investigator | .5 | .5 |
| 10/15–17/91 | Research | .4 | .4 |
| 10/17/91 | Meet with investigator | .3 | .3 |
| 10/16/91 | Meeting with co-counsel | .5 | .5 |
| 11/01/91 | Meeting with client | 1.5 | 1.5 |
| 11/04/91 | Meeting with investigator | .3 | .3 |
| 11/08/91 | Consult with co-counsel | .6 | .6 |
| 11/12/91 | Meeting with co-counsel | .6 | .6 |
| 11/ /92 | Prepare summons | .3 | .3 |
| 12/15/91 | Study answer | .5 | .5 |
| 01/17/92 | Review Time Frame Order | .2 | .2 |
| 01/19/92 | Review defendant's interrogatories | .5 | .5 |
| 02/07/92 | Letter to clerk | .1 | .1 |
| 02/ /92 | Prepare notice of deposition | .1 | .1 |
| 02/27/92 | Letter to clerk | .1 | .1 |
| 02/27/92 | Letter to clerk | .1 | .1 |
| 02/27/92 | Letter to clerk | .3 | .3 |
| 02/26, 27/92 | Preparing and revising plaintiff's discovery requests to defendants | 10.0 | 10.0 |
| 02/27/92 | Review motion to compel discovery | .1 | .1 |
| 03/07/92 | Review order | .1 | .1 |
| 03/08/92 | Review letter for Elkins | .1 | .1 |
| 03/10, 11/92 | Preparing responses to defendant's interrogatories | 4.5 | 4.5 |
| 03/11/92 | Letter to clerk | .1 | .1 |
| 03/11/92 | Letter to opposing counsel | .1 | .1 |
| 03/12/92 | Prepare notice of hearing | .1 | .1 |
| 03/16/92 | Letter to clerk | .1 | .1 |
| 03/16/92 | Letter to Skidemore | .1 | .1 |
| 03/19/92 | Review notice of deposition | .1 | .1 |
| 03/19/92 | Letter to Elkins | .2 | .2 |
| 03/20/92 | Letter to opposing counsel | .1 | .1 |
| 03/22/92 | Prepare subpoena duces tecum | .3 | .3 |
| 03/24/92 | Letter to clerk | .1 | .1 |
| 03/24/92 | Letter to Thomas Memorial Hospital | .1 | 0 |
| 03/24/92 | Prepare motion for protective order | .2 | .2 |
| 03/25/92 | Letter to opposing counsel | .1 | .1 |
| 03/25/92 | Letter to clerk | .1 | .1 |
| 03/26/92 | Letter to Skidemore | .1 | .1 |
| 03/26/92 | Letter to client | .1 | .1 |
| 03/27/92 | Prepare for plaintiff's deposition | 3.2 | 3.2 |
| 03/28/92 | Prepare for plaintiff's deposition | 2.3 | 2.3 |

| Date | Description | | |
|------|-------------|---|---|
| 03/28/92 | Plaintiff's deposition | 2.0 | 2.0 |
| 03/28/92 | Review defendant's supplemental motion to compel | .3 | .3 |
| 04/02/92 | Prepare notice of deposition | .1 | .1 |
| 04/03/92 | Review order | .1 | .1 |
| 04/06/92 | Review order | .1 | .1 |
| 04/07/92 | Prepare motion to compel discovery and notice | .2 | .2 |
| 04/08/92 | Letter to clerk | .1 | .1 |
| 04/08/92 | Review letter for Elkins | .1 | .1 |
| 04/10/92 | Prepare for hearing Hearing before U.S. Magistrate | 4.2 | 4.2 |
| 04/10/92 | Prepare for defendants' depositions | 5.6 | 5.6 |
| 04/12/92 | Review documents produced as result of discovery | 2.0 | 2.0 |
| 04/12/92 | Review personnel files of defendants Prepare supplemental response to defendants' interrogatories | 3.0 | 3.0 |
| 04/13/92 | Prepare for defendants' depositions Defendants' depositions | 8.3 | 8.3 |
| 4/13/92 | Prepare plaintiff's second supplemental motion to compel | 3.2 | 3.2 |
| 04/15/92 | Letter to Elkins | .1 | .1 |
| 04/15/92 | Prepare supplemental response to defendants' interrogatories Review defendants' second supplemental response to plaintiff's request for production | 2.5 | 2.5 |
| 04/15/92 | Review order | .1 | .1 |
| 04/16/92 | Letter to clerk | .1 | .1 |
| 04/16/92 | Review defendants' objections and motion to reconsider Prepare plaintiff's motion to compel to allow plaintiff to shoot booking area | .7 | .7 |
| 04/18/92 | Prepare plaintiff's affidavit | .4 | .4 |
| 04/23/92 | Review order Prepare motion to amend complaint | .4 | .4 |
| 04/26/92 | Review defendants' answers to plaintiff's discovery Review order | 2.9 | 2.9 |
| 04/26/92 | Review and study defendants' motion for partial summary judgment and memo in support of summary judgment Review defendants' second supplemental motion to compel Prepare motion for protective order | 4.3 | 4.3 |
| 04/28/92 | Letter to clerk | .1 | .1 |
| 04/30/92 | Letter to clerk | .1 | .1 |
| 04/30/92 | Further review of documents produced in discovery | 2.5 | 2.5 |
| 04/ /92 | Work on pretrial order | 7.5 | 7.5 |
| 05/01/92 | Letter to Elkins | .1 | .1 |
| 05/01/92 | Prepare plaintiff's objections to defendants' request for production and motion for protective order | .8 | .8 |
| 05/01/92 | Prepare plaintiff's response to defendants' request for production | .5 | .5 |
| 05/01/92 | Prepare motion for an extension of time and file responses and protective order and plaintiff's objections Review defendants' memorandum of law in support of supplemental motion for summary judgment | 3.7 | 3.7 |
| 05/09/92 | Review modified time frame order | .1 | .1 |
| 05/13/92 | Review defendants' objections for extension of time Review defendants' response to its second supplemental motion to compel Review defendants' response to plaintiff's objections to defendants' request for production of documents and protective order | 1.0 | 1.0 |

| Date | Description | | |
|---|---|---|---|
| 05/13/92 | Review defendants' supplemental response to plaintiff's request for production of documents to defendant Gerald Chafin | .5 | .5 |
| 05/14/92 | Review defendants' supplement of record | .4 | .4 |
| 05/ /92 | Prepare plaintiff's second supplemental motion to compel | 2.4 | 2.4 |
| 05/16/92 | Research and organize documents | 1.5 | 1.5 |
| 05/17/92 | Review order | .1 | .1 |
| 05/18/92 | Review defendants' supplemental motion for summary judgment and memo of law | 1.2 | 1.2 |
| 05/20/92 | Letter to Elkins | .1 | .1 |
| 05/21/92 | Prepare for Stacy hearing—Huntington | 4.6 | 4.6 |
| 05/21/92 | Letter to clerk | .1 | .1 |
| 05/23/92 | Letter to Elkins | .1 | .1 |
| 05/25/92 | Prepare response to defendants' request for production | .3 | .3 |
| 05/26/92 | Plaintiff's response to defendants' motion for summary judgment | .5 | .5 |
| 06/01/92 | Letter to Elkins | .1 | .1 |
| 06/08/92 | Review motion to compel | .2 | .2 |
| 06/13/92 | Review defendants' objections to amended and exhibits | .4 | .4 |
| 06/17/92 | Letter to Elkins | .1 | .1 |
| 06/17/92 | Appointment with Dr. Crigger | .8 | .8 |
| 06/17/92 | Review notice of hearing | .1 | .1 |
| 06/19/92 | Letter to opposing counsel | .1 | .1 |
| 06/22/92 | Meeting with expert | 1.2 | 1.2 |
| 06/22/92 | Meeting with Crigger | 1.0 | 1.0 |
| 06/23/92 | Prepare and revise proposed voir dire | 2.2 | 2.2 |
| 06/23/92 | Review order | .1 | .1 |
| 06/24/92 | Research, prepare supplement to pretrial order Consult with co-counsel | 3.7 | 3.7 |
| 06/25/92 | Letter to clerk | .1 | .1 |
| 06/25/92 | Prepare for hearing | 1.0 | 1.0 |
| 06/26/92 | Prepare for pretrial Pretrial conference | 5.2 | 5.2 |
| 06/26/92 | Review and study order | .2 | .2 |
| 06/27/92 | Trial preparation | 8.5 | 8.5 |
| 06/27/92 | Review defendants' reply brief | .5 | .5 |
| 06/28/92 | Trial preparation | 5.6 | 5.6 |
| 06/28/92 | Prepare for hearing on plaintiff's motion to amend complaint Hearing | 4.0 | 4.0 |
| 06/29/92 | Trial preparation | 4.5 | 4.5 |
| 06/30/92 | Meeting with Crigger | 1.1 | 1.1 |
| 07/01/92 | Letter to Elkins | .7 | .7 |
| 07/01/92 | Letter to Judge | .1 | .1 |
| 07/01/92 | Trial preparation | 9.0 | 9.0 |
| 07/02/92 | Review notice from Elkins | .1 | .1 |
| 07/02/92 | Letter to Elkins | .2 | .2 |
| 07/02/92 | Letter to Elkins Letter to Judge | .2 | .2 |
| 07/02/92 | Review instructions | .3 | .3 |
| 07/02/92 | Trial preparation Meeting with client and witnesses | 12.0 | 12.0 |
| 07/02/92 | Letter to clerk Review instructions | .3 | .3 |
| 07/02/92 | Review judgment order | .1 | .1 |
| 07/03/92 | Review medical records from Mann ARH Hospital | .1 | .1 |
| 07/03/92 | Trial preparation Meeting with client and witnesses | 10.5 | 10.5 |
| 07/04/92 | Review motion | .1 | .1 |
| 07/04/92 | Trial preparation | 7.5 | 7.5 |
| 07/04/92 | Review jury instructions | .4 | .4 |
| 07/05/92 | Trial preparation | 8.5 | 8.5 |
| 07/06/92 | Trial preparation Settlement conference | 11.0 | 11.0 |

| | | | |
|---|---|---|---|
| 07/06/92 | Appointment with Dr. Crigger | 1.0 | 1.0 |
| 07/07/92 | Prepare for trial Trial | 12.0 | 12.0 |
| 07/08/92 | Prepare for trial Trial | 14.0 | 14.0 |
| 07/09/92 | Prepare for trial Trial | 13.5 | 13.5 |
| 07/10/92 | Prepare for trial Trial | 14.0 | 14.0 |
| 07/11/92 | Prepare for trial Trial | 16.0 | 16.0 |
| 07/13/92 | Review memorandum opinion and order | .2 | .2 |
| 07/16/92 | Prepare and gather together affidavits, documents, etc., in support of petition | 4.0 | 4.0 |
| 12/08/89–06/29/92 | Phone calls | 11.5 | 8.2 |
| 07/25, 26/92–08/19, 20/92 | Research, write memorandums, and prepare documents | 6.8 | 6.8 |
| 10/11, 12/92 | Prepare for hearing | 1.5 | 1.5 |
| 10/13/92 | Prepare for hearing Travel to and from Huntington Attempt settlement | 3.0 | 3.0 |
| 10/19–20/92 | Further research and prepare supplemental memorandum | 6.0 | 6.0 |
| SUBTOTALS: | | 321.9 | 318.5 |
| Reduced for unsuccessful, undivided claims | | | × .50 |
| | | | 159.25 |
| Multiplied by hourly rate | | × 125 | × 125 |
| | | 40,237.50 | |
| Voluntarily reduced by 20 percent | | × .80 | |
| TOTALS: | | $32,190.00 | $19,906.25 |

## APPENDIX B
## HOURS for MICHAEL KELLY

| DATE | SERVICES RENDERED | TIME REQUESTED | TIME ALLOWED |
|---|---|---|---|
| 10/16/91 | First review of case with Carter Zerbe | .5 | .5 |
| 11/08/91 | Meet with Carter Zerbe to assess case | .6 | .6 |
| 11/12/91 | Two phone calls from Carter Zerbe; review and revise draft of complaint; mail suggested revisions to Carter Zerbe | .6 | .6 |
| 02/14/92 | Confer with Carter Zerbe regarding evidence | .75 | .75 |
| 03/06/92 | Phone call from Carter Zerbe | .1 | .1 |
| 03/09/92 | Phone call from Carter Zerbe | .1 | .1 |
| 03/10/92 | Phone call from Carter Zerbe re: scheduling | .1 | .1 |
| 06/26/92 | Legal research on trial issues | 1.5 | 1.5 |
| 06/29/92 | Two phone calls from Carter Zerbe | .5 | .5 |
| 06/30/92 | Begin drafting instructions; review and revise instructions | 2.5 | 2.5 |
| 07/01/92 | Meet with Carter Zerbe re: evidentiary issues and narrow issues for trial; go over direct and cross examinations; trial preparation; draft instructions | 4.75 | 4.75 |
| 07/02/92 | Review and revise instructions; phone call from Carter Zerbe; update research on medical indifference; review points to be raised at pretrial conference | 3.25 | 3.25 |
| 07/06/92 | Prepare for trial; meet with Carter Zerbe | 5.0 | 5.0 |
| 07/07/92 | Assist at trial in U.S. district court; review court's instructions | 6.0 | 6.0 |
| 07/08/92 | Assist at trial in U.S. district court; research on excessive force standard and immunity | 8.0 | 8.0 |

| 07/09/92 | Assist at trial—day 3—in U.S. district court; draft modified verdict form | 8.0 | 8.0 |
|---|---|---|---|
| 07/10/92 | Assist at trial—day 4—in U.S. district court | 8.0 | 8.0 |
| 07/11/92 | Assist at trial—final day—in U.S. district court | 5.0 | 5.0 |
| 07/13/92 | Research on attorney's fee petition | 1.0 | 1.0 |
| 07/22/92 | Research on fee petition; dictate draft | 3.5 | 3.5 |
| 07/23/92 | Revise draft of fee petition, affidavits, and memorandum | 4.5 | 4.5 |
| 10/12/92 | Research on 1991 and 1992 fee cases; prepare for fee hearing | 2.0 | 2.0 |
| 10/13/92 | Travel to and from Huntington; fee hearing; attempt settlement | 3.0 | 3.0 |
| 10/18/92 | Update research through 972 F.2d 20 and 774 F.Supp.; draft portion of memorandum | 4.0 | 4.0 |

SUBTOTALS: 73.25 73.25

Reduced for undivided, unsuccessful claims × .50

36.63

Multiplied by hourly rate × 75 × 75

TOTALS: $5493.75 $2747.25

## APPENDIX C
## EXPENSES

| RECIPIENT | SERVICES RENDERED | AMOUNT REQUESTED | AMOUNT ALLOWED |
|---|---|---|---|
| Porterfield | Investigator | 574.61 | 574.61 |
| Logan Medical Foundation | Medical Records | 10.00 | 10.00 |
| Williamson Regional | Medical Records | 10.00 | 10.00 |
| Mann ARH Hospital | Medical Records | 8.00 | 8.00 |
| Bob Glass | Investigator | 1812.00 | 1812.00 |
| S.Ct. Library | Copies | 78.50 | 78.50 |
| AAA Court Reporting | Deposition—Stacy | 134.70 | 134.70 |
| Skidemore Reporting | Deposition—Chafin, Justice, Cook, Hensley, Stroud | 1009.50 | 1009.50 |
| U.S. Postal Service | Postage | 23.57 | 23.57 |
| Smart Corporation | Medicals | 37.61 | 37.61 |
| Ritz Camera | Photographs and Developing | 42.50 | 42.50 |
| Crystal Harper | Film, Tapes and Developing | 19.62 | 19.62 |
| Hawey Wells | Expert Witness | 320.53 | 40.00 |
| Accurate Reporting | Hearing Appearance Fee | 40.00 | 40.00 |
| Mingo County Magistrate Court | Copies | 1.00 | 1.00 |
| Mother Wit | Sketch of Jail Area | 31.80 | 31.80 |
| Wells Medical Services | Expert Witness | 1957.00 | 0 |
| AT & T | Long Distance Phone Calls | 311.13 | 236.68 |
| Crystal Harper | Legal Assistant | 4920.00 | 5100.00 |
| Crystal Harper | Legal Assistant Mileage | 284.75 | 284.75 |
| Carter Zerbe | Copying Expense | 818.00 | 818.00 |
| Dr. Crigger | Expert Witness | 3135.00 | 40.00 |
| District Court | Copies | 48.50 | 48.50 |
| Carter Zerbe | Mileage | 387.00 | 387.00 |
| TOTALS: | | $16,015.23 | $10,788.34 |